RONALD GEDNEY *v.* BOARD OF EDUCATION OF
THE TOWN OF GROTON
(AC 16398)

O'Connell, C. J., and Schaller and Daly, Js.

Argued September 29—officially released December 16, 1997

*William J. Dolan,* for the appellant (plaintiff).

*Thomas N. Sullivan,* for the appellee (defendant).

*Opinion*

O'CONNELL, C. J. The plaintiff appeals from the judgment of the trial court affirming the defendant Groton board of education's (board) termination of his teaching contract. The plaintiff claims that the trial court improperly held that the termination of his teaching contract (1) did not violate § 504 of the Rehabilitation Act of 1973 (act); 29 U.S.C. § 794; and (2) did not violate article twenty-one of the amendments to the Connecticut constitution. We affirm the judgment of the trial court.

The following facts are necessary for the disposition of this appeal. The plaintiff was a tenured fourth grade teacher in the Groton public school system. On or about October 4, 1991, he was arrested and charged with possession of cocaine, a felony, in violation of General Statutes § 21a-279 (a), and possession of drug paraphernalia, a misdemeanor, in violation of General Statutes § 21a-267. He was granted accelerated rehabilitation

and, thus, was never convicted of the crimes with which he had been charged. See General Statutes § 54-56e.

Pursuant to the procedure prescribed in General Statutes § 10-151 (d),[1] the board notified the plaintiff by letter that termination of his contract was under consideration on the statutory grounds of "moral misconduct" and "other due and sufficient cause." More specifically, the letter stated that, "without limitation, the administration charges that [the plaintiff] on or about October 4, 1991, in the town of Groton possessed and/or exercised dominion and control over a narcotic substance and/or had knowledge of its presence and narcotic character and/or used or possessed with intent to use drug paraphernalia and/or was involved in conduct proscribed by General Statutes §§ 21a-279 (a) and 21a-267. The above referenced actions seriously compromised [the plaintiff's] effectiveness as a role model and employee of the Groton board of education."

The plaintiff requested a hearing, which was held over the course of eight days in February and March, 1992. The hearing officer filed extensive findings including, inter alia, a finding that "[the plaintiff] admits that

---

[1] General Statutes § 10-151 (d) provides in relevant part: "The contract of employment of a teacher who has attained tenure shall be continued from school year to school year, except that it may be terminated at any time for one or more of the following reasons . . . (3) *moral misconduct* . . . or (6) *other due and sufficient cause.* . . . Prior to terminating a contract, the superintendent shall give the teacher concerned a written notice that termination of such teacher's contract is under consideration and, upon written request filed by such teacher with the superintendent, within seven days after receipt of such notice, shall within the next succeeding seven days give such teacher a statement in writing of the reasons therefor. Within twenty days after receipt of written notice by the superintendent that contract termination is under consideration, such teacher may file with the local or regional board of education a written request for a hearing. . . . Within seventy-five days after receipt of the request for a hearing, the . . . hearing officer . . . shall submit written findings and a recommendation to the board of education as to the disposition of the charges against the teacher, and shall send a copy of such findings and recommendation to the teacher. . . ." (Emphasis added.)

on or about October 4, 1991, in the town of Groton he possessed and/or exercised dominion and control over a narcotic substance and/or had knowledge of its presence and narcotic character." Despite his findings, the hearing officer recommended that the plaintiff not be terminated and that he be returned to employment at the start of the 1993-94 school year.

On April 7, 1993, the board accepted the hearing officer's findings, rejected his recommendation and voted to terminate the plaintiff's employment for "moral misconduct" and "other due and sufficient cause." In June, 1993, the plaintiff appealed to the trial court claiming, inter alia, that, because his prior addiction was a "disability," his termination was in violation of both federal law and article twenty-one of the amendments to the Connecticut constitution.

The trial court held that the plaintiff's termination did not violate federal law because he was not "otherwise qualified" to be a teacher and, thus, was not terminated solely by reason of his having been a cocaine addict. The trial court further found that since the plaintiff was not terminated because of his disability, he failed to make the required prima facie showing of discrimination to support his constitutional claim. Consequently, the court found no violation of article twenty-one of the amendments to the Connecticut constitution. The trial court dismissed the plaintiff's appeal and his appeal to this court followed.

I

The plaintiff first claims that the trial court improperly concluded that his termination did not violate § 504 of the act. The relevant portion thereof provides that *"[n]o otherwise qualified individual with a disability . . .* shall, *solely by reason of her or his disability,* be excluded from the participation in, be denied the benefits of, or be subjected to discrimination under any

program or activity receiving Federal financial assistance . . . ." (Emphasis added.) 29 U.S.C. § 794 (a). Because the board receives federal funds, it is subject to the act. The issue before us is whether the plaintiff was (1) an "otherwise qualified individual with a disability" and (2) terminated "solely by reason of his . . . disability."

To establish a violation of § 504 of the act, a plaintiff must prove (1) that he is an "individual with a disability" under the act, (2) that he is "otherwise qualified" for the position sought, (3) that he is being excluded from the position "solely by reason of his . . . disability," and (4) that the position exists as part of a program or activity receiving federal financial assistance. See *Doe* v. *New York University*, 666 F.2d 761, 774 (2d Cir. 1981).

The plaintiff qualifies as an "individual with a disability" under the act because he was found by the hearing officer to be a recovering drug addict at the time of his termination. "Prior substance abuse" is a recognized disability for purposes of the act. See *Teahan* v. *Metro-North Commuter Railroad Co.*, 951 F.2d 511, 517 (2d Cir. 1991), cert. denied, 506 U.S. 815, 113 S. Ct. 54, 121 L. Ed. 2d 24 (1992). Having a disability is not enough by itself, however, to bring the plaintiff within the ambit of the act. He must also show that his termination was "solely by reason of his . . . disability" and that he was "otherwise qualified" for the position. See *Doe* v. *New York University*, supra, 666 F.2d 774. We commence our analysis by ascertaining whether there was any reason for terminating the plaintiff's contract other than his disability.

The plaintiff argues that he was terminated solely by reason of his disability because the board's decision to terminate him was based on conduct that is attributable to the disability. See *Teahan* v. *Metro-North Commuter Railroad Co.*, supra, 951 F.2d 514. In holding that an

employer fired its employee because of the employee's alcoholism and not because of his absenteeism, the *Teahan* court concluded that "an employer 'relies' on a [disability] when it justifies termination based on conduct caused by the [disability]." Id., 516.

Relying on *Teahan*, the plaintiff contends that the defendant cannot base its termination decision on possession of cocaine because such possession is attributable to his being a substance abuser. The plaintiff's reliance on *Teahan* is misplaced. In *Teahan*, the plaintiff's misconduct was absenteeism, directly resulting from his disability. Here, the plaintiff's misconduct was felonious activity leading to an arrest that, despite his having a disability, would have disqualified him from employment or justified his termination. Though the plaintiff's possession of the narcotic substance may have been causally related to his drug addiction, his subsequent arrest, the event that triggered his termination, was not causally related to his disability.

In *Rado* v. *Board of Education*, 216 Conn. 541, 545, 583 A.2d 102 (1990), a tenured Naugatuck high school physical education teacher was suspended and ultimately terminated following his arrest on three counts of eavesdropping in violation of General Statutes § 53a-189, a class D felony. The school board's decision relied on "moral misconduct" and "other due and sufficient cause," two of the reasons for termination of a tenured teacher specified by § 10-151 (d).

On appeal, the trial court held that the school board acted appropriately. The plaintiff appealed to the Connecticut Supreme Court, which stated that "[w]e have not previously defined 'moral misconduct' for the purpose of § 10-151 (d), nor do we find it necessary in this case to essay a comprehensive definition of that term. The finding of the panel that the plaintiff had tampered with the school telephone system for the purpose of

overhearing conversations of other persons involves conduct proscribed by § 53a-189, which makes such eavesdropping a class D felony. A legislative determination that certain conduct should be punished as a crime is highly significant in deciding whether it constitutes 'moral misconduct.' The conclusion of the board that the plaintiff's behavior fell within this classification, therefore, cannot be characterized as arbitrary or illegal." Id., 553.

The *Rado* court further held that other due and sufficient cause is the equivalent of good cause. " 'Good cause includes any ground which is put forward by the [school] committee in good faith and which is not arbitrary, irrational, unreasonable, or irrelevant to the committee's task of building up and maintaining an efficient school system.' . . . Thus, in deciding whether particular conduct constitutes 'due and sufficient' cause for termination, the impact of that conduct upon the operation of the school is a significant consideration. . . . The conclusion of the board that '[s]uch behavior must necessarily have undermined [the plaintiff's] capacity to effectively work . . . with fellow staff members, sets an extremely poor example for students and staff and reflects personal values inconsistent with [his] continued employment as a teacher' is supported by the findings of the panel and satisfies this statutory criterion for termination." (Citation omitted.) Id., 554.

"A school board 'has discretion to accept or reject a recommendation from an impartial hearing panel,' though it is bound by the panel's findings of fact unless unsupported by the evidence." Id., 555. "[The court's] function in reviewing the action of the board pursuant to § 10-151 [d] is to determine whether the board has acted illegally and not to substitute [the court's] judgment for that of the board." Id.

In this case, the school board decided to reject the hearing officer's recommendation to retain the plaintiff

as a fourth grade teacher. In its decision, the board relied on the hearing officer's findings that the plaintiff's misconduct rose to the level of activity deemed by the legislature to be a crime. Like the teacher's misconduct in *Rado*, the plaintiff's criminal conduct undermines his ability to work effectively with other faculty members, sets a poor example for students and reflects personal values inconsistent with his continued employment as a fourth grade teacher. Similar to the Naugatuck school board's decision in *Rado*, the Groton school board's determination that such activity constitutes "moral misconduct" for the purposes of § 10-151 (d) "cannot be characterized as arbitrary or illegal [or irrational]." Id., 553. We therefore hold that the plaintiff in this case was properly terminated for "moral misconduct" and "other due and sufficient cause," and is not entitled to the protection of the Rehabilitation Act.

Because we conclude that the plaintiff was not terminated solely by reason of his disability, it is unnecessary to reach the "otherwise qualified" element of § 504 of the Rehabilitation Act.

II

The plaintiff next claims that the trial court improperly concluded that his termination did not constitute discrimination against a person with a disability in violation of article twenty-one of the amendments to the Connecticut constitution. The relevant portion of article twenty-one provides that "[n]o person shall be denied the equal protection of the law nor be subjected to segregation or discrimination in the exercise or enjoyment of his or her civil or political rights because of religion, race, color, ancestry, national origin, sex or physical or mental disability."

To implicate article twenty-one of the amendments to the Connecticut constitution, the plaintiff first must

establish that he was discriminated against because of his disability, in violation of the constitution's equal protection clause. In part I of this opinion, we established that the school board terminated the plaintiff for "moral misconduct" and "other due and sufficient cause" unrelated to his disability, and, thus, it is logical that such termination could not have been the culmination of unequal treatment for the purposes of a state constitutional claim. We find no showing of discrimination based on religion, race, color, ancestry, national origin, sex or physical or mental disability, and hold that the plaintiff's constitutional claim is without merit.

The judgment is affirmed.

In this opinion the other judges concurred.