EUGENE P. MERCER *v.* HECTOR RODRIQUEZ ET AL.
(AC 24280)

Dranginis, DiPentima and Hennessy, Js.

Argued January 16—officially released June 8, 2004

*Eugene P. Mercer*, pro se, the appellant (plaintiff).

*Lynn D. Wittenbrink*, assistant attorney general, with whom, on the brief, was *Richard Blumenthal*, attorney general, for the appellees (defendants).

*Opinion*

DRANGINIS, J. This appeal requires that we decide whether the trial court properly determined that it lacked subject matter jurisdiction to hear the plaintiff's federal claims because he failed to exhaust available administrative remedies as required by the federal Prison Litigation Reform Act of 1995, 42 U.S.C. § 1997e (a). Although we conclude that the plaintiff failed to exhaust available administrative remedies, we also conclude that his failure to exhaust such remedies did not deprive the court of subject matter jurisdiction. Nonetheless, we affirm the judgment of the trial court dismissing the action, as a prisoner may not bring an action seeking federal relief until the prisoner has exhausted available administrative remedies.

The pro se plaintiff, Eugene P. Mercer, commenced this action in 2002 when he was in the custody of the commissioner of correction (commissioner) at the cor-

rectional institution at Cheshire.[1] In a five part complaint, the plaintiff alleged that the defendants, employees of the department of correction (department),[2] had failed to assign him to the motor vehicle marker shop (marker shop) at Cheshire on the basis of his physical disability, which violated his rights under titles I and II of the Americans with Disabilities Act of 1990 (disabilities act), § 504 of the Rehabilitation Act of 1973 (rehabilitation act), and the equal protection clauses of the federal and state constitutions.[3] He sought compensatory and punitive damages, declaratory and injunctive relief, and attorney's fees.

The defendants filed a motion to dismiss the complaint, claiming that the court lacked subject matter jurisdiction pursuant to 42 U.S.C. § 1997e (a)[4] because the plaintiff had failed to exhaust available administrative remedies. They also argued that sovereign immunity barred the court's jurisdiction over the plaintiff's claims for damages under the rehabilitation and disabilities acts, and that the plaintiff's claims were moot because he was no longer confined to the facility at Cheshire.

The court granted the defendants' motion to dismiss, agreeing that it lacked subject matter jurisdiction pursu-

---

[1] The plaintiff is currently incarcerated at the Osborn correctional institution in Somers.

[2] The defendant prison officials are Hector Rodriquez, John Hall, Rick Bartholomew, Richard Brozozski, Mike Fourtin, Rich Alhage, Al Brown and an individual the plaintiff identified only as Mr. Petrocca.

[3] The plaintiff brought the action against the defendants in their individual and official capacities. He subsequently amended his complaint to allege claims against the defendants in their official capacities only. At the time of the hearing on the defendants' motion to dismiss, the plaintiff withdrew his claims alleged pursuant to title I of the disabilities act.

[4] "No action shall be brought with respect to prison conditions under section 1983 of this title, or any other Federal law, by a prisoner confined in any jail, prison, or other correctional facility *until such administrative remedies as are available are exhausted.*" (Emphasis added.) 42 U.S.C. § 1997e (a).

ant to 42 U.S.C. § 1997e (a). The court found that the plaintiff's claims were "grievable" and that he had failed to avail himself of the department's grievance process. The court added, in its memorandum of decision, that the rationale of the exhaustion requirement in 42 U.S.C. § 1997e (a) is consistent with this state's jurisprudence on subject matter jurisdiction.[5] The plaintiff appealed to this court.

The essence of the plaintiff's appellate claims is that the court improperly dismissed his complaint pursuant to 42 U.S.C. § 1997e (a) because there were no administrative remedies available to him and, further, that the court improperly determined that he had not exhausted the available administrative remedies.[6] In their brief, the defendants argued that the court's judgment of dismissal on jurisdictional grounds should be affirmed under both 42 U.S.C. § 1997e (a) and Connecticut law. Prior to oral argument in this court, however, the defen-

---

[5] In support of its decision to dismiss the complaint for lack of subject matter jurisdiction, the court cited *O & G Industries, Inc.* v. *Planning & Zoning Commission*, 232 Conn. 419, 425, 655 A.2d 1121 (1995) (" 'if an adequate administrative remedy exists, it must be exhausted before the Superior Court will obtain jurisdiction to act in the matter' "). To resolve the appeal, we need not reach the exhaustion doctrine of this state or the question of whether an *adequate* remedy and *available* remedies are the same thing. But see *Booth* v. *Churner*, 532 U.S. 731, 121 S. Ct. 1819, 149 L. Ed. 2d 958 (2001).

The court did not address the other grounds for dismissing the complaint raised by the defendants in their motion to dismiss. On appeal, the defendants state in a footnote in their brief that the plaintiff's claims are moot in view of the plaintiff's having been transferred to the Osborn correctional institution in Somers. The defendants' argument is not briefed adequately, and we fail to see how the plaintiff's claim for damages can be moot.

[6] The plaintiff articulated his claims in the following manner in his brief. "A. The Superior Court erred in finding that the plaintiff-appellant is held to the provisions of the Prison Litigation Reform Act where grievance procedure was not available . . . . B. The Superior Court erred in dismissing plaintiff's action in holding plaintiff to the provisions of the Prison Litigation [Reform] Act where the administrative remedies of the department of correction's grievance procedure [do] not specifically provide for monetary damages . . . ."

dants brought the case of *Richardson* v. *Goord*, 347 F.3d 431 (2d Cir. 2003), to our attention, which informs our decision as to how, not whether, the plaintiff's claims are dismissed.

Our standard of review governing an appeal from a judgment granting a motion to dismiss on the ground of lack of subject matter jurisdiction concerns a question of law and is plenary. *Bailey* v. *Medical Examining Board for State Employee Disability Retirement*, 75 Conn. App. 215, 219, 815 A.2d 281 (2003). "[O]nce the question of lack of jurisdiction of a court is raised, [it] must be disposed of no matter in what form it is presented . . . ." (Citations omitted; internal quotation marks omitted.) *Castro* v. *Viera*, 207 Conn. 420, 429, 541 A.2d 1216 (1988). "[I]t is axiomatic that this court has jurisdiction to determine whether it has jurisdiction." *First National Bank of Chicago* v. *Luecken*, 66 Conn. App. 606, 610, 785 A.2d 1148 (2001), cert. denied, 259 Conn. 915, 792 A.2d 851 (2002).

"A motion to dismiss properly attacks the jurisdiction of the court, essentially asserting that the plaintiff *cannot* as a matter of law and fact state a cause of action that should be heard by the court. . . . A court deciding a motion to dismiss must determine not the merits of the claim or even its legal sufficiency, but rather, whether the claim is one that the court has jurisdiction to hear and decide. . . . Our Supreme Court has determined that when ruling upon whether a complaint survives a motion to dismiss, a court must take the facts to be those alleged in the complaint, including those facts necessarily implied from the allegations, construing them in a manner most favorable to the pleader." (Citations omitted; emphasis in original; internal quotation marks omitted.) *Bailey* v. *Medical Examining Board for State Employee Disability Retirement*, supra, 75 Conn. App. 219.

We are mindful that "[t]he power of the court to hear and determine, which is implicit in jurisdiction, is not to be confused with the way in which that power must be exercised in order to comply with the terms of the statute." *Bailey* v. *Mars*, 138 Conn. 593, 601, 87 A.2d 388 (1952). "Subject matter jurisdiction involves the authority of a court to adjudicate *the type of controversy* presented by the action before it. . . . A court does not truly lack subject matter jurisdiction if it has competence to entertain the action before it." (Internal quotation marks omitted.) *Connecticut Light & Power Co.* v. *St. John*, 80 Conn. App. 767, 771, 837 A.2d 841 (2004).

Because the allegations of the complaint determine whether the court has subject matter jurisdiction, our first step is to examine the allegations of the plaintiff's amended complaint. The complaint, at first blush, is unusual in that it is styled in the federal fashion, which, by itself, is not a fatal defect. The plaintiff alleges that the court had jurisdiction to hear the action pursuant to title II of the disabilities act, 42 U.S.C. § 12131 et seq.,[7] the rehabilitation act, 29 U.S.C. § 701 et seq.,[8] and the equal protection clauses of the state and federal constitutions. A party, however, cannot confer subject matter jurisdiction merely by alleging it; see *Fleet*

[7] Section 12202 of title 42 of the United States Code provides: "A state shall not be immune under the eleventh amendment to the Constitution of the United States from an action in Federal or State court of competent jurisdiction for a violation of this chapter. In any action against a State for a violation of the requirements of this chapter, remedies (including remedies both at law and in equity) are available for such a violation to the same extent as such remedies are available for such a violation in an action against any public or private entity other than a State."

[8] Section 794 (d) of title 29 of the United States Code provides: "The standards used to determine whether this section has been violated in a complaint alleging employment discrimination under this section shall be the standards applied under title I of the Americans with Disabilities Act of 1990 (42 U.S.C. § 12111 et seq.) and the provisions of sections 501 through 504, and 510, of the Americans with Disabilities Act of 1990 (42 U.S.C. §§ 12201-12204 and 12210), as such sections relate to employment."

*National Bank* v. *Nazareth,* 75 Conn. App. 791, 793, 818 A.2d 69 (2003); as the allegations of the complaint are controlling. The plaintiff's jurisdictional allegations invoke the sources of the remedies he seeks.

The court dismissed the plaintiff's complaint because he had failed to exhaust the administrative remedies available pursuant to the department's grievance procedures. The court, however, did not state its factual findings underlying that conclusion in its memorandum of decision and the plaintiff failed to seek an articulation.[9] See Practice Book § 66-5. In their motion to dismiss, the defendants addressed the plaintiff's claims as an employment issue and argued that the department did not offer employment opportunities, but rather employment programs to facilitate prisoners' reentry into society. During argument on the motion to dismiss, the plaintiff asserted that his claims were based on his classification assignment. The court found that the plaintiff's claims were grievable without identifying the department administrative directive or other remedies the plaintiff had failed to exhaust. On appeal, the plaintiff argues that the court improperly determined that his claims were grievable. He claims that under department

[9] Not only is our review of the dismissal of the plaintiff's claims for lack of subject matter jurisdiction hampered by the brevity of the court's memorandum of decision, but our review also is hampered by the plaintiff's failure to submit a transcript of the proceedings before the court. We are uncertain whether the court merely heard oral argument on the defendants' motion to dismiss or also held a hearing to determine whether the plaintiff had exhausted available administrative remedies. It is also unclear whether exhibits were admitted into evidence. The appellant is responsible for providing an adequate record for our review. See Practice Book § 61-10.

"[I]t is the established policy of the Connecticut courts to be solicitous of pro se litigants and when it does not interfere with the rights of other parties to construe the rules of practice liberally in favor of the pro se party. . . . Although we allow pro se litigants some latitude, the right of self-representation provides no attendant license not to comply with relevant rules of procedural and substantive law." (Citation omitted; internal quotation marks omitted.) *Strobel* v. *Strobel,* 64 Conn. App. 614, 617–18, 781 A.2d 356, cert. denied, 258 Conn. 937, 786 A.2d 426 (2001).

administrative directive 9.6, classification assignments are not grievable. The defendants argue that not only did the plaintiff fail to exhaust the remedies available within the department, but also that he failed to avail himself of the remedies afforded by the state commission on human rights and opportunities and the federal Equal Employment Opportunity Commission.

We therefore examine the plaintiff's allegations of wrongdoing to determine the nature of his claims, which, in turn, will guide our identification of the administrative remedy or remedies the plaintiff was required to exhaust, if any. "[T]he interpretation of pleadings is always a question of law for the court . . . . We have pointed out that [t]he burden [is] upon the pleaders to make such averments that the material facts should appear with reasonable certainty; and for that purpose [the pleaders] were allowed to use their own language. Whenever that language fails to define *clearly* the issues in dispute, the court will put upon it such reasonable construction as will give effect to the pleadings in conformity with the general theory which it was intended to follow, and do substantial justice *between the parties.* . . . *But* essential allegations may not be supplied by conjecture or remote implication." (Citations omitted; emphasis in original; internal quotation marks omitted.) *Cahill* v. *Board of Education,* 198 Conn. 229, 236, 502 A.2d 410 (1985).

The plaintiff alleged that he is "a qualified individual with a disability who is mobility impaired and uses a walker and cane for ambulation . . . . Although mobility impaired the plaintiff *can* perform the essential function of the *employment* position he desires." (Emphasis added; internal quotation marks omitted.) In identifying the various defendants, he used two terms to allege their various responsibilities: inmate classification and work industries program.

In 2001, the plaintiff asked to be assigned to a clerical position in the marker shop. His application was denied because " 'inmates are not hired for specific positions within the Marker Shop, positions are filled as the need arises.' " The plaintiff again applied for a position in the marker shop, but was informed by two of the defendants " 'that the administration has concerns that [he] may fall and injure [himself], particularly during inclement weather.' " The plaintiff assured these defendants that his walker and cane were sufficient to help him ambulate during inclement weather, and he informed them that "their concerns could not stand as the basis to deny [his] participation in this program or activity." On one occasion, a defendant informed him that " 'the shop is not equipped for persons with disabilities.' " The plaintiff told the defendants that " 'he was not seeking any structural modifications or accommodations that would fundamentally alter the nature of the work program; and that [his] participation in this work program was not predicated on whether the shop was structurally equipped for persons with disabilities.' "

In December, 2001, the plaintiff informed the defendant warden that the disabilities act provides that " '[n]o qualified inmate with a disability shall be discriminated against from participation in work programs. The Department shall make reasonable accommodation to the known disability of qualified applicants.' " The plaintiff underwent a physical examination that resulted in medical authorization for him to be assigned to the work program in the marker shop. The plaintiff learned that he was officially classified and assigned to the marker shop program. Other inmates were permitted to participate in the marker shop, but despite having medical authorization, the plaintiff was not.

The plaintiff alleged that the defendants intentionally denied him an equal opportunity to benefit from the marker shop program on the basis of their irrational

concerns, perceptions or fears for his safety. He also alleged that the defendants did not prevent him from participating in the marker shop work program due to the necessity of an accommodation that would exceed the requirements of the disabilities act or impose an undue financial administrative burden. Furthermore, the plaintiff believed that the department receives federal funds.

We note, significantly, that the plaintiff did not allege specifically that he had exhausted the available administrative remedies. Despite the absence of this specific allegation, we grant the plaintiff's complaint the liberal interpretation to which it is entitled. The plaintiff alleged that he submitted and resubmitted applications to participate in the marker shop work program. He discussed the situation with certain of the defendants. In the trial court, he presented the court with copies of correspondence with the department ombudsman related to the issue. The parties disputed the issue of exhaustion before the court. If the court had found that the plaintiff had exhausted the available administrative remedies, he could have amended his complaint to incorporate that allegation. See Practice Book § 10-62. Unfortunately, for the plaintiff, the court found that he had not exhausted his remedies under the department's grievance system.

In the trial court and on appeal, the parties dispute whether the opportunity the plaintiff sought in the marker shop was related to classification, a program or employment. The essence of the plaintiff's claim is that the court incorrectly held that he had not exhausted his available remedies because the claim was grievable. By referring to his claim both in the trial court and here as a classification issue, the plaintiff argues that pursuant to department administrative directive 9.6, classification issues are not subject to the department's

grievance system. He concludes, therefore, that there was no available remedy for him to exhaust.

In resolving the plaintiff's claims, we need not determine whether the opportunity the plaintiff sought in the marker shop concerned employment, classification or programming. The department has promulgated certain administrative directives. Directive 9.2 addresses the inmate classification system, and directive 9.6 concerns a multitiered grievance system.[10] The classification directive provides at 9.2.15 that "[a] classification decision *may be appealed* to the Unit Administrator or designee within 15 days of the decision." (Emphasis added.) The amended complaint does not allege that the plaintiff availed himself of directive 9.2.15. The plaintiff did not allege that any of the defendants are the unit administrator or designee or that any of his actions were taken within fifteen days of a decision. Although the court did not address classification issues, nothing the plaintiff attached to his objection to the defendants' motion to dismiss is relevant to directive 9.2.15. If the plaintiff's claim is a classification issue, we conclude that he did not exhaust the available administrative remedy of an appeal as provided in directive 9.2.15.[11]

The plaintiff correctly argues that classification decisions are not grievable pursuant to directive 9.6.6.B.4. Directive 9.6.6.A sets forth inmate concerns that are grievable. Subdivision five provides that the following issues are grievable: "Any other matter relating to access to privileges, programs and services, conditions of care or supervision and living unit conditions within

[10] The relevant portions of the department directive were attached to the parties' motion papers in the trial court and included in the appendices of their briefs in this court. All parties rely on them, and we therefore take judicial notice of them.

[11] Paragraph forty of the amended complaint undercuts the validity of the plaintiff's argument. In paragraph forty, he alleged that he was officially *classified* and assigned to the marker shop.

the authority of the Department of Correction, to include rights under the Americans with Disabilities Act, except as noted herein." The court found that the plaintiff's claims were grievable. The plaintiff acknowledges that he did not file a grievance. Even if the court was wrong and the plaintiff's claim was one of classification, the plaintiff did not file an appeal as provided by directive 9.2, which was an administrative remedy available to him.

The United States Supreme Court in *Porter* v. *Nussle*, 534 U.S. 516, 519, 122 S. Ct. 983, 152 L. Ed. 2d 12 (2002), addressed the obligation of inmates, who claim their federal rights were denied while they were incarcerated, to exhaust prison grievance procedures before seeking judicial relief. The Supreme Court discussed the history of 42 U.S.C. § 1997e (a) and its predecessor, noting that in 1996, Congress invigorated the exhaustion provision of the Prison Litigation Reform Act. Id., 524. The dominant concern of the act is "to promote administrative redress, filter out groundless claims, and foster better prepared litigation of claims aired in court . . . ." (Citation omitted.) Id., 528. "[E]xhaustion in cases covered by § 1997e (a) is now mandatory." Id., 524.

The allegations of the complaint regarding the actions the plaintiff took to resolve his claim of discrimination by speaking to the defendants and writing letters is unavailing to his claim that he exhausted the available remedies because those actions do not satisfy the requirements of administrative remedies available to him. See *Hock* v. *Thipedeau*, 245 F. Sup. 2d 451 (D. Conn. 2003). In *Hock*, the plaintiff inmate brought an action against the defendant, a former department of correction officer, for violating the eighth amendment right to be free of cruel and unusual punishment. Id., 452–53. While the plaintiff was incarcerated, she and the defendant engaged in a relationship, which, when

discovered, resulted in the defendant's resignation from the department and the plaintiff's action. Id., 454. The plaintiff voluntarily cooperated with the department investigation of the defendant's conduct. Id. Thereafter, she commenced an action against the defendant. After the jury returned a verdict in her favor, the defendant filed a motion to reconsider the court's denial of his motion to dismiss. Id., 453.

The United States District Court for the District of Connecticut granted the motion to reconsider and set aside the jury's verdict, concluding that the plaintiff had failed to exhaust the administrative procedures set forth in the department directive. Id., 458. "Under Connecticut's administrative scheme, if a complaint is brought to the attention of the [department of correction] and it investigates the matter and makes conclusions based on information provided in part by an inmate, that does not relieve the inmate of her responsibility to follow the proper procedures if she decides to bring a federal action based on such claims." Id., 457, citing *Booth* v. *Churner*, 532 U.S. 731, 121 S. Ct. 1819, 149 L. Ed. 2d 958 (2001). Furthermore, the department's directives "set forth the procedures for an inmate to set into motion the grievance process." *Hock* v. *Thipedeau*, supra, 245 F. Sup. 2d 456. "[G]rievances that are rejected may be appealed; the Directives provide for three levels of review." Id. The District Court ruled that the plaintiff in *Hock* "must exhaust all available administrative procedures as set forth in the Directives prior to filing suit in Federal Court." Id., citing *Booth* v. *Churner*, supra, 736. We therefore conclude that the plaintiff's alleged efforts to secure a place in the marker shop did not exhaust the administrative remedies that were available.

On appeal, the plaintiff also claims that 42 U.S.C. § 1997e (a) does not require that he exhaust the department's grievance procedure because the grievance pro-

cedure does not provide for damages. This is precisely the question that was decided to the contrary in *Booth v. Churner*, supra, 532 U.S. 734 ("question is whether an inmate seeking only money damages must complete a prison administrative process that could provide some sort of relief on the complaint stated, but no money"). "The meaning of the phrase 'administrative remedies . . . available' is the crux of the case . . . . Neither of [the parties] denies that some redress for a wrong is presupposed by the statute's requirement of an 'available' 'remed[y]'; neither argues that exhaustion is required where the relevant administrative procedure lacks authority to provide any relief or to take any action whatsoever in response to a complaint. The dispute here, then, comes down to whether or not a remedial scheme is 'available' where . . . the administrative process has authority to take some action in response to a complaint, but not the remedial action an inmate demands to the exclusion of all other forms of redress." Id., 736.

"The 'available' 'remed[y]' must be 'exhausted' before a complaint under [42 U.S.C.] § 1983 may be entertained. While the modifier 'available' requires the possibility of some relief for the action complained of . . . the word 'exhausted' has a decidedly procedural emphasis. It makes sense only in referring to the procedural means, not the particular relief ordered." Id., 738–39. "It makes no sense to demand that someone exhaust 'such administrative [redress]' as is available; one 'exhausts' processes, not forms of relief, and the statute provides that one must." Id., 739. In the matter before us, we therefore conclude that the plaintiff was required to exhaust the available department grievance procedure before he brought an action in the Superior Court seeking relief under federal law.[12]

---

[12] Because we conclude that the plaintiff failed to exhaust the available administrative remedies of the department as required by 42 U.S.C. § 1997e (a), we do not address the defendants' remaining arguments.

Although the plaintiff failed to sustain his burden of exhausting the available administrative remedies before he sought judicial assistance, we must consider, in view of *Richardson* v. *Goord,* supra, 347 F.3d 431, whether the court properly determined that it lacked subject matter jurisdiction.[13] "If [the trial court] applied any wrong rule of law to the situation, it was not acting without jurisdiction but in the erroneous exercise of its jurisdiction." *Artman* v. *Artman,* 111 Conn. 124, 130, 149 A. 246 (1930).

In *Richardson* v. *Goord,* supra, 347 F.3d 431, the United States Court of Appeals for the Second Circuit agreed to follow the holding of its sister circuit courts of appeal that have ruled on the question of whether the exhaustion requirement of 42 U.S.C. § 1997e (a) controls subject matter jurisdiction. Those courts have concluded that the language of the statute "simply governs the timing of the action and does not contain the type of sweeping and direct language that would indicate a jurisdictional bar rather than a mere codification . . . of administrative exhaustion requirements." (Internal quotation marks omitted.) *Ali* v. *District of Columbia,* 278 F.3d 1, 5–6 (D.C. Cir. 2002), citing *Weinberger* v. *Salfi,* 422 U.S. 749, 757, 95 S. Ct. 2457, 45 L. Ed. 2d 522 (1975). "[A]n administrative claim is not essential to a case or controversy, and 28 U.S.C. § § 1331, 1343 supply subject-matter jurisdiction. Section 1997e (a) does not affect the jurisdiction established by those statutes." *Perez* v. *Wisconsin Dept. of Corrections,* 182 F.3d 532, 536 (7th Cir. 1999). In the federal courts, a case in which a prisoner fails to exhaust the available administrative remedies may be dismissed for failure to exhaust administrative remedies under 42 U.S.C. § 1997e (a), but not for lack of subject matter jurisdiction on that basis. Id., 538. "The provision does

---

[13] The court did not have the benefit of *Richardson* v. *Goord,* supra, 347 F.3d 431, at the time it ruled on the motion to dismiss.

not defeat federal-court jurisdiction, it merely defers it." (Internal quotation marks omitted.) *Steele* v. *Federal Bureau of Prisons,* 355 F.3d 1204, 1208 (10th Cir. 2003); see also *Richardson* v. *Goord,* supra, 347 F.3d 431; *Casanova* v. *Dubois,* 289 F.3d 142 (1st Cir. 2002); *Chelette* v. *Harris,* 229 F.3d 684 (8th Cir. 2000), cert. denied, 531 U.S. 1156, 121 S. Ct. 1106, 148 L. Ed. 2d 977 (2001); *Nyhuis* v. *Reno,* 204 F.3d 65, (3d Cir. 2000); *Underwood* v. *Wilson,* 151 F.3d 292 (5th Cir. 1998), cert. denied, 526 U.S. 1133, 119 S. Ct. 1809, 143 L. Ed. 2d 1012 (1999); *Wright* v. *Morris,* 111 F.3d 414 (6th Cir. 1997).

In this action, the plaintiff sought relief under the rehabilitation and disabilities acts. Section 12202 of title 42 of the United States Code provides in relevant part: "A state shall not be immune under the eleventh amendment to the Constitution of the United States from an action in Federal or *State* court of competent jurisdiction for a violation of this chapter. . . ."[14] (Emphasis added.) See footnote 7. The rehabilitation act is in accord with 42 U.S.C. § 12202. The federal statutes grant the plaintiff the right to commence an action in a state court.

The Superior Court is a constitutional court, the jurisdiction of which is defined by law. Conn. Const., art. V, § 1. "The Superior Court shall be the sole court of original jurisdiction for all causes of action, except such actions over which the courts of probate have original jurisdiction, as provided by statute. . . ." General Statutes § 51-164s. Indeed, the Superior Court has jurisdiction to hear administrative appeals involving claims arising under the disabilities and rehabilitation acts. See, e.g., *Unified School District No. 1* v. *Dept. of Education,* 64 Conn. App. 273, 780 A.2d 154, cert. denied,

---

[14] The question of whether Congress has authority to waive a state's sovereign immunity was addressed by the United States Supreme Court in *Tennessee* v. *Lane,* 541 U.S. 509, 124 S. Ct. 1978, 158 L. Ed. 2d 820 (2004).

258 Conn. 910, 782 A.2d 1253 (2001); *Gedney* v. *Board of Education*, 47 Conn. App. 297, 703 A.2d 804 (1997), cert. denied, 243 Conn. 968, 707 A.2d 1268 (1998), respectively.

Although the Superior Court has jurisdiction to hear cases concerning prison conditions arising under federal law, a prisoner may bring such an action only after he has exhausted such administrative remedies as are available. Here, the court dismissed the plaintiff's cause of action for lack of subject matter jurisdiction.[15] Because the Superior Court had subject matter jurisdiction over the plaintiff's claims, the dismissal was procedurally improper. Nevertheless, we find that the dismissal was harmless based on our Supreme Court's holding in *Fort Trumbull Conservancy, LLC* v. *Alves*, 262 Conn. 480, 815 A.2d 1188 (2003).

In *Fort Trumbull Conservancy, LLC*, our Supreme Court determined that the trial court's dismissal of the plaintiff's claims against the defendant city and the defendant building official for lack of subject matter jurisdiction was improper. Id., 497. The court, nonetheless, found that the dismissal was harmless. It reasoned that the plaintiff's claims were subject to a motion to strike on the ground of legal insufficiency and that the plaintiff's ability to amend after a motion to strike would have been unavailing. Id., 497–502; see also *McCutcheon & Burr, Inc.* v. *Berman*, 218 Conn. 512, 527–28, 590 A.2d 438 (1991) (although trial court should have treated motion to dismiss as motion to strike, procedural irregularity was harmless because plaintiff could not demonstrate that it could amend complaint to avoid original deficiencies). Applying the aforesaid reasoning to the present case, the judgment of the trial court is

---

[15] Our rules of practice provide that a motion to dismiss shall be used to assert "(1) lack of jurisdiction over the subject matter; (2) lack of jurisdiction over the person; (3) improper venue; (4) insufficiency of process; and (5) insufficiency of service of process. . . ." Practice Book § 34a-10 (a).

affirmed, although it was founded on an improper reason.

The judgment is affirmed.

In this opinion the other judges concurred.