### KEITH JOHNSON ET AL. *v.* M. JODI RELL ET AL.
### (AC 30279)

Bishop, Gruendel and Beach, Js.

Argued December 7, 2009—officially released March 9, 2010

*Keith Johnson*, pro se, the appellant (named plaintiff).

*Steven R. Strom*, assistant attorney general, with whom, on the brief, was *Richard Blumenthal*, attorney general, for the appellees (defendants).

*Opinion*

GRUENDEL, J. The pro se plaintiff Keith Johnson appeals from the judgment of the trial court dismissing his federal cause of action against the defendants, Governor M. Jodi Rell, commissioner of correction Theresa Lantz and warden David Strange of the Osborn Correctional Institution.[1] The plaintiff contends that the court improperly concluded that it lacked subject matter jurisdiction over his action. We disagree and, accordingly, affirm the judgment of the trial court.

The plaintiff is an inmate incarcerated at the Osborn Correctional Institution (Osborn). In February, 2008, he commenced in the Superior Court a federal cause of action, pursuant to 42 U.S.C. § 1983, challenging the

---

[1] The complaint also named as pro se plaintiffs Corey Ferguson, Ronald Reiske, Ahmaad Lane, William Faraday, Elbert Harris, James Golphin, Jonathan McMillan, Caribe Billie, Thomas Morgan and Lee Williams. The court dismissed the action with respect to those plaintiffs for lack of personal jurisdiction due to the fact that they had not signed the complaint, as required by Practice Book § 8-1, which provides in relevant part that "[a]ny person proceeding without the assistance of counsel shall sign the complaint . . . ." The court's dismissal of the action with respect to those plaintiffs for lack of personal jurisdiction is not a subject of this appeal. We therefore refer in this opinion to Johnson as the plaintiff.

constitutionality of the conditions of his confinement.[2] See *Preiser* v. *Rodriguez,* 411 U.S. 475, 499, 93 S. Ct. 1827, 36 L. Ed. 2d 439 (1973) ("§ 1983 action is a proper remedy for a state prisoner who is making a constitutional challenge to the conditions of his prison life, but not to the fact or length of his custody"); *Jenkins* v. *Haubert,* 179 F.3d 19, 21 (2d Cir. 1999) (prisoner may bring § 1983 claim "challenging the conditions of [his] confinement where [he] is unable to challenge the conditions through a petition for federal habeas corpus"). As characterized by the plaintiff in his appellate brief, his complaint "enumerated a laundry list of conditions at [Osborn] which are the basis of [his] constitutional challenge." Specifically, he alleged that Osborn is overcrowded, averring that "[t]he cells . . . were originally built as single cells containing one bed per cell, a desk, a toilet and sink and a storage chest. . . . A vast majority of the cells at [Osborn] now contain two inmates per cell." The plaintiff also alleged, inter alia, that "[t]he ventilation system is grossly inadequate"; that "[t]he heating system is . . . inadequate and ineffective"; that "[t]he plumbing is not in adequate and working condition"; that various fire hazards exist within Osborn; that "[t]he procedures for the cleaning of cells . . . are inadequate"; that "[t]he shower facilities . . . are deplorable"; that "[r]ecreation[al] opportunities . . . are grossly inadequate"; that "[t]he dining facilities and food preparation areas . . . are unsanitary"; and that "[t]he staffing of the medical department . . . is grossly inadequate." Exposure to such conditions, he

---

[2] Section 1983 of title 42 of the United States Code provides in relevant part: "Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State or Territory or the District of Columbia, subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress . . . ."

alleged, constituted cruel and unusual punishment in violation of the eighth amendment to the United States constitution.[3]

Notably, the plaintiff sued the defendants in both their official and individual capacities. In his prayer for relief, the plaintiff requested declaratory and injunctive relief, compensatory and punitive damages, and an award of costs and fees associated with the prosecution of the action.

Pursuant to Practice Book §§ 10-30 and 10-31 (a) (1), the defendants filed a motion to dismiss for lack of subject matter jurisdiction. That motion was predicated on multiple grounds, including lack of standing, immunity from suit and failure to exhaust administrative remedies.[4] In response, the plaintiff filed an objection

---

[3] The plaintiff's complaint also alleged, in general terms, a deprivation of due process under the fourteenth amendment. The court did not address that claim in its memorandum of decision dismissing the plaintiff's action, and the plaintiff thereafter failed to seek an articulation on that issue. "Under our rules of practice, it is the sole responsibility of the appellant to provide this court with an adequate record for review. Practice Book § 61-10. Practice Book § 66-5 permits an appellant to seek an articulation by the trial court of the factual and legal basis on which it rendered its decision. [A]n articulation is appropriate where the trial court's decision contains some ambiguity or deficiency reasonably susceptible of clarification. . . . An articulation may be necessary where the trial court fails completely to state any basis for its decision . . . or where the basis, although stated, is unclear. . . . The purpose of an articulation is to dispel any . . . ambiguity by clarifying the factual and legal basis upon which the trial court rendered its decision, thereby sharpening the issues on appeal. . . . [W]e will, in the absence of a motion for articulation, assume that the trial court acted properly." (Citation omitted; internal quotation marks omitted.) *Nicefaro* v. *New Haven*, 116 Conn. App. 610, 617, 976 A.2d 75, cert. denied, 293 Conn. 937, 981 A.2d 1079 (2009). Moreover, the plaintiff has not addressed that issue in his appellate brief or raised any claim relating thereto. We thus confine our review to the plaintiff's eighth amendment challenge.

[4] Pursuant to the Prison Litigation Reform Act of 1995, as amended, 42 U.S.C. § 1997e et seq., "[n]o action shall be brought with respect to prison conditions under section 1983 . . . or any other Federal law, by a prisoner confined in any jail, prison, or other correctional facility until such administrative remedies as are available are exhausted." 42 U.S.C. § 1997e (a). Exhaustion is "mandatory" and "applies to all inmate suits about prison

thereto, which was accompanied by his supporting affidavit. The court held a hearing on the matter on April 14, 2008. In its July 1, 2008 memorandum of decision, the court concluded that the doctrines of sovereign and qualified immunity barred the plaintiff's action against the defendants. As a result, the court dismissed the action for lack of subject matter jurisdiction. From that judgment, the plaintiff appeals.

At the outset, we note that "[i]n an appeal from the granting of a motion to dismiss on the ground of subject matter jurisdiction, this court's review is plenary. A determination regarding a trial court's subject matter jurisdiction is a question of law. When . . . the trial court draws conclusions of law, our review is plenary and we must decide whether its conclusions are legally and logically correct and find support in the facts that appear in the record. . . . Jurisdiction of the subject matter is the power [of the court] to hear and determine

life, whether they involve general circumstances or particular episodes . . . ." *Porter* v. *Nussle*, 534 U.S. 516, 524, 532, 122 S. Ct. 983, 152 L. Ed. 2d 12 (2002). Moreover, § 1997e (a) requires "proper exhaustion," which necessitates completion of "the administrative review process in accordance with the applicable procedural rules, including deadlines, as a precondition to bringing suit . . . ." *Woodford* v. *Ngo*, 548 U.S. 81, 88, 126 S. Ct. 2378, 165 L. Ed. 2d 368 (2006).

This court likewise has held that "[a]lthough the Superior Court has jurisdiction to hear cases concerning prison conditions arising under federal law, a prisoner may bring such an action only after he has exhausted such administrative remedies as are available." *Mercer* v. *Rodriquez*, 83 Conn. App. 251, 267, 849 A.2d 886 (2004). At the same time, we remind counsel that a prisoner's alleged failure to exhaust administrative remedies properly is the focus of a motion to strike rather than a motion to dismiss, as it does not implicate the subject matter jurisdiction of the court. Id., 266–68; see also *Steele* v. *Federal Bureau of Prisons*, 355 F.3d 1204, 1208 (10th Cir. 2003) (§ 1997e [a] "does not defeat . . . jurisdiction, it merely defers it" [internal quotation marks omitted]), cert. denied, 543 U.S. 925, 125 S. Ct. 344, 160 L. Ed. 2d 222 (2004), overruled in part on other grounds by *Jones* v. *Bock*, 549 U.S. 199, 204 n.2, 216, 127 S. Ct. 910, 166 L. Ed. 2d 798 (2007). In dismissing the present action for lack of subject matter jurisdiction, the court did not address the plaintiff's alleged failure to exhaust his administrative remedies, nor do we in this opinion.

cases of the general class to which the proceedings in question belong. . . . A court has subject matter jurisdiction if it has the authority to adjudicate a particular type of legal controversy." (Internal quotation marks omitted.) *Francis* v. *Chevair*, 99 Conn. App. 789, 791, 916 A.2d 86, cert. denied, 283 Conn. 901, 926 A.2d 669 (2007). "When a . . . court decides a jurisdictional question raised by a pretrial motion to dismiss, it must consider the allegations of the complaint in their most favorable light. . . . In this regard, a court must take the facts to be those alleged in the complaint, including those facts necessarily implied from the allegations, construing them in a manner most favorable to the pleader." (Internal quotation marks omitted.) *Bellman* v. *West Hartford*, 96 Conn. App. 387, 393, 900 A.2d 82 (2006). Further, in addition to admitting all facts well pleaded, the motion to dismiss "invokes any record that accompanies the motion, including supporting affidavits that contain undisputed facts." (Internal quotation marks omitted.) *Henriquez* v. *Allegre*, 68 Conn. App. 238, 242, 789 A.2d 1142 (2002).

Our consideration of the court's subject matter jurisdiction begins with the defendants' contention that the plaintiff lacks standing.[5] They maintain that the plaintiff's failure to allege injury in his complaint deprived the court of subject matter jurisdiction and mandated dismissal of the action. We agree.

It is well established that "[a] party must have standing to assert a claim in order for the court to have

[5] Although the court determined that the plaintiff's complaint failed to specify "how these conditions have personally caused [him] pain and suffering," the court did not expressly address the issue of standing in its memorandum of decision. We nevertheless consider the defendants' contention in light of "the fundamental principle" that a party seeking redress must demonstrate a direct injury; *Connecticut State Medical Society* v. *Oxford Health Plans (CT), Inc.*, 272 Conn. 469, 481 n.8, 863 A.2d 645 (2005); and the fact that an appellate court "is authorized to rely upon alternative grounds supported by the record to sustain a judgment." (Internal quotation marks omitted.) *Kelley* v. *Bonney*, 221 Conn. 549, 592, 606 A.2d 693 (1992).

subject matter jurisdiction over the claim. . . . Standing is the legal right to set judicial machinery in motion. One cannot rightfully invoke the jurisdiction of the court unless he has, in an individual or representative capacity, some real interest in the cause of action, or a legal or equitable right, title or interest in the subject matter of the controversy. . . . [Our Supreme Court] has often stated that the question of subject matter jurisdiction, because it addresses the basic competency of the court, can be raised by any of the parties, or by the court sua sponte, at any time. . . . [T]he court has a duty to dismiss, even on its own initiative, any appeal that it lacks jurisdiction to hear. . . . Where a party is found to lack standing, the court is consequently without subject matter jurisdiction to determine the cause. . . . Our review of the question of the plaintiff's standing is plenary." (Citations omitted; internal quotation marks omitted.) *Lewis* v. *Slack*, 110 Conn. App. 641, 643–44, 955 A.2d 620, cert. denied, 289 Conn. 953, 961 A.2d 417 (2008).

Standing is no mere procedural technicality. As the United States Supreme Court has explained, "[t]he power to declare the rights of individuals and to measure the authority of governments . . . is legitimate only in the last resort, and as a necessity in the determination of real, earnest and vital controversy." (Internal quotation marks omitted.) *Valley Forge Christian College* v. *Americans United for Separation of Church & State, Inc.*, 454 U.S. 464, 471, 102 S. Ct. 752, 70 L. Ed. 2d 700 (1982). As a result, "[t]he exercise of judicial power, which can so profoundly affect the lives, liberty, and property of those to whom it extends, is therefore restricted to litigants who can show [an injury] resulting from the action which they seek to have the court adjudicate."[6] (Internal quotation marks omitted.) Id., 473.

---

[6] Because Connecticut's appellate courts are bound by "a basic judicial duty to avoid deciding a constitutional issue if a nonconstitutional ground exists that will dispose of the case"; *Moore* v. *McNamara*, 201 Conn. 16, 20,

The standing requirement further evinces a proper regard for the judicial branch's relationship with coequal branches of government under our constitutional structure. Thus, "[i]t is the role of courts to provide relief to claimants, in individual or class actions, who have suffered, or will imminently suffer, actual harm; it is not the role of courts, but that of the political branches, to shape the institutions of government in such fashion as to comply with the laws and the Constitution." *Lewis* v. *Casey*, 518 U.S. 343, 349, 116 S. Ct. 2174, 135 L. Ed. 2d 606 (1996).

An allegation of injury is both fundamental and essential to a demonstration of standing. Under Connecticut law, standing "requires no more than a colorable claim of injury; a plaintiff ordinarily establishes his standing by *allegations* of injury."[7] (Emphasis in original.) *Maloney* v. *Pac*, 183 Conn. 313, 321 n.6, 439 A.2d 349 (1981). "As long as there is some direct injury for which the plaintiff seeks redress, the injury that is alleged need not be great." Id., 321; see also *Broadnax* v. *New Haven*, 270 Conn. 133, 156, 851 A.2d 1113 (2004) ("only those individuals who have suffered a direct injury would have standing"). Furthermore, an allegation of injury is a prerequisite under federal law to the maintenance of an action under § 1983. See, e.g., *Colombo* v. *O'Connell*, 310 F.3d 115, 117 (2d Cir. 2002) ("[t]o state a claim

---

513 A.2d 660 (1986); see also *State* v. *Ritrovato*, 280 Conn. 36, 50, 905 A.2d 1079 (2006); *State* v. *McCahill*, 261 Conn. 492, 501, 811 A.2d 667 (2002); *State* v. *Stern*, 65 Conn. App. 634, 638, 782 A.2d 1275, cert. denied, 258 Conn. 935, 785 A.2d 232 (2001); standing arguably is of heightened import when the claim presented is one of constitutional dimension.

[7] Federal standing jurisprudence requires an "injury in fact" that is "concrete and particularized" and "actual or imminent, not conjectural or hypothetical . . . ." (Citation omitted; internal quotation marks omitted.) *Lujan* v. *Defenders of Wildlife*, 504 U.S. 555, 560, 112 S. Ct. 2130, 119 L. Ed. 2d 351 (1992). Our Supreme Court has stated that "[t]here is little material difference between what we have required and what the United States Supreme Court in *Lujan* demanded of the plaintiff to establish standing." *Gay & Lesbian Law Students Assn.* v. *Board of Trustees*, 236 Conn. 453, 466 n.10, 673 A.2d 484 (1996).

under [§] 1983, a plaintiff must allege facts indicating that some official action has caused the plaintiff to be deprived of his or her constitutional rights—in other words, there is an injury requirement to state the claim"), cert. denied, 538 U.S. 961, 123 S. Ct. 1750, 155 L. Ed. 2d 512 (2003); *Ciambriello* v. *County of Nassau*, 292 F.3d 307, 323 (2d Cir. 2002) ("[i]n order to state a claim under § 1983, a plaintiff must allege that he was injured by either a state actor or a private party acting under color of state law").

The complaint in the present case lacks that requisite allegation, as does the affidavit submitted by the plaintiff in opposing the defendants' motion to dismiss. By the plaintiff's own admission, the complaint is comprised of a "laundry list" of conditions at Osborn with which he takes issue, but nowhere in the complaint does he allege any injuries arising therefrom. At the April 14, 2008 hearing, the court specifically inquired as to whether the plaintiff could refer to any specific allegation in the complaint alleging an injury. The plaintiff conceded he could not, stating: "No, not any specific injury. There aren't injuries that I could present to the court. I did not mention them in the complaint. The complaint just encompasses the general conditions in the [correctional institution]."[8] Taken in a light most favorable to the plaintiff, his complaint alleges that

---

[8] At oral argument before this court, the plaintiff for the first time alleged that "the violation of his constitutional rights is the injury." That allegation procedurally is improper, as the plaintiff failed to present it to the trial court and has not briefed it in this appeal. He further provides no authority to support the contention.

In addition, this court has rejected such a contention in *Tedesco* v. *Stamford*, 24 Conn. App. 377, 588 A.2d 656 (1991), rev'd on other grounds, 222 Conn. 233, 610 A.2d 574 (1992). We stated: "It is well established that a plaintiff must prove more than a mere violation of a constitutional right in order to collect compensatory damages pursuant to 42 U.S.C. § 1983. *Carey* v. *Piphus*, 435 U.S. 247, 264, 98 S. Ct. 1042, 55 L. Ed. 2d 252 (1978). He must demonstrate that the constitutional deprivation caused him some actual injury. *Wheatley* v. *Beetar*, 637 F.2d 863, 867 (2d Cir. 1980)." *Tedesco* v. *Stamford*, supra, 382. Moreover, the plaintiff's circular logic is contrary to

Osborn contains overcrowded and inhumane conditions. Nevertheless, absent an allegation of direct injury, it remains the province of the political branches to shape that institution of government. *Lewis* v. *Casey*, supra, 518 U.S. 349. Absent an allegation of direct injury, the plaintiff lacked standing to invoke the jurisdiction of the court. Accordingly, the action properly was dismissed.

The judgment is affirmed.

In this opinion the other judges concurred.

the great weight of decisional law, both state and federal, dismissing claims alleging constitutional violations for lack of standing. For example, in *Lewis* v. *Casey*, supra, 518 U.S. 343, the United States Supreme Court considered the standing requirement in the context of a prisoner's fundamental right of access to courts pursuant to *Bounds* v. *Smith*, 430 U.S. 817, 821, 97 S. Ct. 1491, 52 L. Ed. 2d 72 (1977). The court held that a prisoner pursuing such a constitutional claim is obligated to demonstrate, as a "constitutional prerequisite," the existence of an actual injury. *Lewis* v. *Casey*, supra, 351; accord *Smith* v. *Arkansas Dept. of Correction*, 103 F.3d 637, 643 (8th Cir. 1996) ("[a]s a prerequisite to any inquiry about the conditions of confinement, as with all claims, an inmate seeking relief must satisfy basic constitutional standing requirements [including demonstration of] an actual or imminent injury in fact").

Also noteworthy is the discussion in *Lewis* regarding the respective roles of the judicial and "political branches of the State and Federal governments" in confronting a constitutional challenge by a prisoner. *Lewis* v. *Casey*, supra, 518 U.S. 349–50. The court stated: "[T]he distinction between [those] roles would be obliterated if, to invoke intervention of the courts, no actual or imminent harm were needed, but merely the status of being subject to a governmental institution that was not organized or managed properly. If—to take another example from prison life—a healthy inmate who had suffered no deprivation of needed medical treatment were able to claim violation of his constitutional right to medical care, see *Estelle* v. *Gamble*, 429 U.S. 97 [103, 97 S. Ct. 285, 50 L. Ed. 2d 251] (1976), simply on the ground that the prison medical facilities were inadequate, the essential distinction between judge and executive would have disappeared: it would have become the function of the courts to assure adequate medical care in prisons." *Lewis* v. *Casey*, supra, 350. That discussion informs our analysis in the present case, as the plaintiff's complaint alleges, inter alia, inadequate medical care.