******************************************************

The "officially released" date that appears near the beginning of an opinion is the date the opinion will be published in the Connecticut Law Journal or the date it is released as a slip opinion. The operative date for the beginning of all time periods for the filing of postopinion motions and petitions for certification is the "officially released" date appearing in the opinion.

All opinions are subject to modification and technical correction prior to official publication in the Connecticut Law Journal and subsequently in the Connecticut Reports or Connecticut Appellate Reports. In the event of discrepancies between the advance release version of an opinion and the version appearing in the Connecticut Law Journal and subsequently in the Connecticut Reports or Connecticut Appellate Reports, the latest version is to be considered authoritative.

The syllabus and procedural history accompanying an opinion that appear in the Connecticut Law Journal and subsequently in the Connecticut Reports or Connecticut Appellate Reports are copyrighted by the Secretary of the State, State of Connecticut, and may not be reproduced or distributed without the express written permission of the Commission on Official Legal Publications, Judicial Branch, State of Connecticut.

******************************************************

# JOSHUA MARCINISZYN ET AL. *v.* BOARD OF EDUCATION OF THE TOWN OF SOUTHINGTON ET AL.
## (AC 46736)

Suarez, Clark and Lavine, Js.

*Syllabus*

The plaintiffs, a self-represented nonattorney father and his minor son by and through the father as next friend, appealed from the trial court's denial of their petition for a bill of discovery. They claimed, inter alia, that the court erred when it determined that they had failed to establish probable cause for their claims that the defendants had discriminated against the son in denying him admission to a public high school program in violation of several federal civil rights laws. *Held*:

This court properly considered, sua sponte, the issue of the plaintiff father's standing to bring this appeal in his individual capacity and of his authority to proceed in a representative capacity as a self-represented nonattorney on behalf of his minor son, as exceptional circumstances warranted this court's review, the parties have been afforded an opportunity to be heard, the plaintiffs have failed to raise a colorable claim of prejudice, and the record was adequate for review, even though the parties did not raise the issue in their principal briefs.

The plaintiff father had standing in his individual capacity to appeal from the trial court's decision denying the petition for a bill of discovery, as he was classically aggrieved by the court's decision in that, as one of two plaintiffs in the proceedings before the court, he suffered an injury when the court denied his request to act pursuant to its common-law authority to issue the bill.

The plaintiff father, notwithstanding his aggrievement by the trial court's decision, did not have standing to bring the action in his individual capacity in the first instance because he was not classically aggrieved, as a review of the petition revealed that the injuries alleged therein were exclusively injuries to his minor son and not to him, and the court should have dismissed the petition as to the father for lack of subject matter jurisdiction rather than denying it.

This court dismissed the appeal as to the minor son as the plaintiff father did not have the authority as a self-represented nonattorney to proceed in a representative capacity on behalf of his son, and the father failed to cure that defect by retaining counsel to appear on behalf of the son when this court afforded the father the opportunity to do so.

Argued September 4, 2024—officially released February 11, 2025

*Procedural History*

Petition for a bill of discovery seeking certain information related to the application process for a high school educational program, brought to the Superior Court in the judicial district of Waterbury and tried to the court, *Pierson, J.*; judgment denying the petition, from which the plaintiffs appealed to this court. *Appeal dismissed in part*; *reversed in part*; *judgment directed.*

*Joshua Marciniszyn*, self-represented, the appellant, and for the appellant D (plaintiffs).

*Peter J. Murphy*, with whom were *Bradley M. Harper* and, on the brief, *Chelsea C. McCallum*, for the appellee (named defendant).

*Opinion*

CLARK, J. The plaintiffs, Joshua Marciniszyn, who is self-represented, and his minor child D, by and through Marciniszyn as next friend, appeal from the trial court's denial of their petition for a bill of discovery (petition). On appeal, the plaintiffs argue that the court erred when it determined that they failed to establish probable cause for their claims that the defendants, the Board of Education of the Town of Southington and the town of Southington, had discriminated against D in violation of several federal civil rights laws. They also argue that the court improperly granted the defendants a continuance to file an objection to their petition and improperly limited the presentation of testimony at the hearing on the petition. We conclude that Marciniszyn lacked standing to bring this action in his individual capacity. We therefore reverse in part the court's judgment and remand the case with direction to dismiss the petition as to Marciniszyn in his individual capacity. We dismiss the appeal as to D because Marciniszyn lacks authority, as a self-represented nonattorney, to proceed in a representative capacity on D's behalf before this court.

The following undisputed facts and procedural history are relevant to this appeal. Southington High School operates an educational program called the Southington Regional Agriculture program (AG program). Students from the towns of Southington, Berlin, Farmington, Bristol, New Britain, Cheshire, Plainville, Terryville, Waterbury, and Wolcott are eligible to apply to the AG program, but not all students who apply are accepted. D applied to the AG program for the 2023–2024 school year and was placed on a waiting list.

The plaintiffs commenced this action on March 7, 2023. They filed their petition, captioned as "Joshua Marciniszyn [and] Joshua Marciniszyn P/P/A[1] (Minor Child) [D], Plaintiff v. [Defendants]." They sought an order directing the defendants to disclose, inter alia, "the [t]raining [m]anual used, referenced, and implemented, to evaluate all the applications" to the AG program; "every and all, applications, separated into those initially accepted, those put on wait lists, and those rejected," including information about applicants' grades, test scores, and recommendations; internal and external communications to and from "decision makers, including but not limited to, the principal, vice principal, superintendent, teachers, [and] school board"; and "social media research conducted on each student." They also sought to compel the defendants to answer certain interrogatories, including: "Please state in detail why [D] was not selected at the initial selection process?" "What additional steps could [D] have completed to secure placement?" And "[p]lease describe the complete and entire methodology . . . used to reach the determination of students accepted, rejected, and placed on the wait list . . . ."

---

[1] "Per proxima amici, or [PPA], means by or through the next friend, and is employed when an adult brings suit on behalf of a minor, who was unable to maintain an action on his own behalf at common law." (Internal quotation marks omitted.) *Marciniszyn* v. *Taylor*, Superior Court, judicial district of Waterbury, Docket No. CV-20-5026268-S (March 19, 2021).

The plaintiffs alleged that they were entitled to this information because the defendants had discriminated against D in violation of Title IX of the Education Amendments of 1972, 20 U.S.C. § 1681 et seq.; the Americans with Disabilities Act of 1990, 42 U.S.C. § 12101 et seq.; Title VI[2] of the Civil Rights Act of 1964, 42 U.S.C. § 2000d et seq.; Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e et seq.; and "Title 42 of the C.F.R., et al."[3] The plaintiffs further alleged that the defendants "wilfully and maliciously acted in bad faith and with extreme prejudice" when they put D on a waiting list for the AG program and that this decision constituted discrimination against D "based on race, (biracial birth), sex, gender, sexual orientation, sexual orientation of parent, [individualized education program] status, disease or diagnosis, place of current residence, place of current educational district, place of current educational school and/or other factors that this discovery will reveal." In support of these claims of discrimination, the plaintiffs alleged that D had been placed on a waiting list despite being a uniquely strong candidate for admission to the AG program, as evidenced by his grades, standardized test scores, and extracurricular activities.

The plaintiffs further alleged that the defendants' decision to place D on a waiting list impeded D's future college and career plans. In particular, they claimed

[2] Although the plaintiffs did not, in their petition, expressly list Title VI among the civil rights statutes that they accused the defendants of violating, they cited elsewhere in their petition to the language of Title VI as setting forth a "standard" that, they claimed, the defendants had breached. Mindful that self-represented parties' pleadings should be construed "broadly and realistically, rather than narrowly and technically"; (internal quotation marks omitted) *Oliphant* v. *Commissioner of Correction*, 274 Conn. 563, 569, 877 A.2d 761 (2005); we construe the plaintiffs' petition to allege probable cause for a Title VI violation.

[3] In a later filing, the plaintiffs also claimed that the defendants had violated "all other federal and state laws, to which publicly funded schools are subject to."

that D was "entitled to remedy" for: "[l]oss of education that would prepare him for the career path he has chosen"; "[l]oss of education that would appear on his resume that college acceptance boards review"; [l]oss of education that would position him to receive scholarships and grants to further his education beyond high school"; "[l]ifetime loss of income in his chosen career, as a result of lost education . . . [and] [l]oss of educational information and resources that would be unknown to him, giving students that attend, the advantage over him in the same career field."

Following briefing and oral argument,[4] the trial court, *Pierson, J.*, denied the petition on July 7, 2023. The court concluded that "[t]he . . . claims of discrimination are premised on the assumption that, as [D], an excellent student, was denied admission to the [AG] program, such denial must have been based on impermissible discrimination of some kind. Such an assumption is insufficient to give rise to an inference of intentional or otherwise prohibited discrimination. The application is devoid of detailed facts demonstrating that [D's] characteristics affected, in any way, the defendants' decision to place him on the 'wait list.' " (Emphasis omitted.) The court concluded that the plaintiffs

---

[4] Prior to oral argument on the plaintiffs' petition in the trial court, the court, over the plaintiffs' objection, continued the matter from April 10 to May 1, 2023, in order to allow the defendants time to file an objection to the petition and the plaintiffs time to file a reply thereto. On the date scheduled for oral argument on the petition, before he began his argument, Marciniszyn asked if the trial court would be allowing testimony, stating that D was available to authenticate certain exhibits that the plaintiffs had filed. The court replied that testimony would be unnecessary because the defendants had not objected to the exhibits. Although the plaintiffs, in this appeal, challenge both the continuance order and the exclusion of D's proffered testimony, along with the court's determination that they had failed to establish probable cause for a bill of discovery, we do not reach the merits of their claims in light of our conclusions herein that Marciniszyn lacked standing in his individual capacity to bring this action and lacks authority as a self-represented nonattorney to proceed on D's behalf before this court.

were using their petition as a means of conducting a " 'fishing expedition.' " This appeal followed.

On September 30, 2024, following oral argument before this court, we sua sponte ordered the parties to submit supplemental memoranda addressing (1) whether Marciniszyn has standing to bring this appeal in his individual capacity, and (2) whether, in light of this court's decision in *Lowe* v. *Shelton*, 83 Conn. App. 750, 755–59, 851 A.2d 1183, cert. denied, 271 Conn. 915, 859 A.2d 568 (2004), Marciniszyn—who is neither an attorney licensed to practice law in Connecticut, nor admitted pro hac vice—is authorized, as a self-represented nonattorney, to proceed in a representative capacity on behalf of D, and, if not, whether and how that defect may be cured. The parties filed supplemental memoranda in accordance with this order.

Thereafter, on October 23, 2024, we ordered that the adjudication of this appeal be stayed for sixty days in order to afford Marciniszyn an opportunity to retain an attorney licensed to practice and in good standing in Connecticut to represent D in this appeal.[5] We further specified that this attorney, if retained, must file an appearance with this court within sixty days, along with a statement specifying (1) whether they intended to adopt the plaintiffs' brief or submit a substitute brief in lieu thereof, and (2) whether they sought reargument of the appeal. We cautioned that, should Marciniszyn fail to comply with this order, the appeal as to D may be dismissed.

Marciniszyn did not retain counsel to represent D within sixty days of our October 23, 2024 order. On

---

[5] As a minor, D may not represent himself. See, e.g., *V. V.* v. *V. V.*, 218 Conn. App. 157, 168, 291 A.3d 109 (2023) ("a child may bring a civil action only by a guardian or next friend, whose responsibility it is to ensure that the interests of the ward are well represented" (internal quotation marks omitted)).

December 19, 2024, the plaintiffs filed a motion requesting an extension of time of ninety days to secure counsel for D. The defendants did not file a response. We denied the motion on January 2, 2025, and lifted the stay. The appeal is now ready for adjudication.

I

As a preliminary matter, in their supplemental memorandum to this court, the plaintiffs claim that it is improper for us to raise and decide, sua sponte, the issues of Marciniszyn's standing to bring this appeal in his individual capacity and of his authority to proceed in a representative capacity on behalf of D. In particular, the plaintiffs argue that no exceptional circumstances justify our consideration of these issues and that our consideration of these issues would prejudice them. We disagree.

"Our appellate courts generally do not consider issues that were not raised by the parties. . . . This is because our system is an adversarial one in which the burden ordinarily is on the parties to frame the issues . . . . There are, however, well established exceptions to this rule." (Citations omitted; internal quotation marks omitted.) *State* v. *Connor*, 321 Conn. 350, 362, 138 A.3d 265 (2016). "[W]ith respect to the propriety of a reviewing court raising and deciding an issue that the parties themselves have not raised . . . the reviewing court (1) must do so when that issue implicates the court's subject matter jurisdiction, and (2) has the discretion to do so if (a) exceptional circumstances exist that would justify review of such an issue if raised by a party, (b) the parties are given an opportunity to be heard on the issue, and (c) there is no unfair prejudice to the party against whom the issue is to be decided." *Blumberg Associates Worldwide, Inc.* v. *Brown & Brown of Connecticut, Inc.*, 311 Conn. 123, 128, 84 A.3d 840 (2014) (*Blumberg*). The record must also be

adequate for review of the unpreserved issue. See, e.g., *Matos* v. *Ortiz*, 166 Conn. App. 775, 792, 144 A.3d 425 (2016).

"Exceptional circumstances [justifying sua sponte review of an unpreserved issue in the court's discretion] exist when the interests of justice, fairness, integrity of the courts and consistency of the law significantly outweigh the interest in enforcing procedural rules governing the preservation of claims. . . . To satisfy concerns of fundamental fairness, at a minimum, the parties must be provided sufficient notice that the court intends to consider an issue. It is implicit that an opportunity to be heard must be a meaningful opportunity . . . . The parties must be allowed time to review the record with that issue in mind, to conduct research, and to prepare a response. . . . Additionally, [p]rejudice may be found, for example, when a party demonstrates that it would have presented additional evidence or that it otherwise would have proceeded differently if the claim had been raised at trial." (Citations omitted; emphasis omitted; footnote omitted; internal quotation marks omitted.) *Diaz* v. *Commissioner of Correction*, 335 Conn. 53, 59, 225 A.3d 953 (2020). "[B]ecause it may be difficult for a party to prove definitively that it would have proceeded in a different manner and, as a result, would suffer unfair prejudice if the reviewing court were to consider the unpreserved issue, once that party makes a colorable claim of such prejudice, the burden shifts to the other party to establish that the first party will not be prejudiced by the reviewing court's consideration of the issue." (Internal quotation marks omitted.) *State* v. *Connor*, supra, 321 Conn. 373–74.

The issue of Marciniszyn's standing in his individual capacity implicates subject matter jurisdiction as to him; see, e.g., *Portfolio Recovery Associates, LLC* v. *Healy*, 158 Conn. App. 113, 115, 118 A.3d 637 (2015); and this court is therefore required to raise and decide

the issue sua sponte. By contrast, the issue of Marcinis-
zyn's authority, as a self-represented nonattorney, to
proceed in a representative capacity on behalf of D
does not implicate subject matter jurisdiction. See *Lowe*
v. *Shelton*, supra, 83 Conn. App. 759 ("the filing of an
appeal on behalf of a minor by a nonattorney parent
does not implicate subject matter jurisdiction"). We are
convinced, however, that sua sponte consideration of
this latter issue is proper because exceptional circum-
stances warrant our review, the parties have been
afforded an opportunity to be heard, the plaintiffs have
failed to raise a colorable claim of prejudice, and the
record is adequate for review.

In *Lowe* v. *Shelton*, supra, 83 Conn. App. 756–59, this
court held that, in general, nonattorney parents may
not represent their minor children on appeal without
the assistance of an attorney. The court in *Lowe* rea-
soned that " 'it is not in the interests of minors or incom-
petents that they be represented by [nonattorneys].
Where they have claims that require adjudication, they
are entitled to trained legal assistance so their rights
may be fully protected.' " Id., 757, quoting *Cheung* v.
*Youth Orchestra Foundation of Buffalo, Inc.*, 906 F.2d
59, 61 (2d Cir. 1990). Because "[t]he choice to appear
[in a self-represented capacity] is not a true choice for
minors who under state law . . . cannot determine
their own legal actions . . . [t]here is . . . no individ-
ual choice to proceed [in a self-represented capacity]
for courts to respect, and the sole policy at stake con-
cerns the exclusion of [nonlicensed] persons to appear
as attorneys on behalf of others." (Internal quotation
marks omitted.) *Lowe* v. *Shelton*, supra, 757. As the
court in *Lowe* explained, "[t]he conduct of litigation by
a nonlawyer creates unusual burdens not only for the
party he represents but as well for his adversaries and
the court. The lay litigant frequently brings pleadings

that are awkwardly drafted, motions that are inarticulately presented, proceedings that are needlessly multiplicative. In addition to lacking the professional skills of a lawyer, the lay litigant lacks many of the attorney's ethical responsibilities, e.g., to avoid litigating unfounded or vexatious claims." (Internal quotation marks omitted.) Id., 758.[6]

We begin with the question of whether exceptional circumstances justify our sua sponte review of Marciniszyn's authority, as a self-represented nonattorney, to proceed in a representative capacity on behalf of D. We note at the outset that this court in *Lowe* reached its holding only after ordering supplemental briefs at oral argument on the questions of (1) whether the court had subject matter jurisdiction over the appeal because it was filed by the plaintiff's parents without the aid of an attorney, and (2) whether any defect resulting from the parents' filing of the appeal was curable. See id., 753 (describing supplemental brief order without analysis of why order was proper). Moreover, although we are unaware of any case in which this court or our Supreme Court has squarely discussed the propriety of a court's consideration, sua sponte, of nonattorney self-represented parents' authority to "represent" their children, our research reveals that at least six of the federal circuit courts of appeals—including the United States Court of Appeals for the Second Circuit, whose case law influenced this court's holding in *Lowe*—have considered this issue sua sponte. See, e.g., *Dunlop* v. *Commissioner of Social Security*, 518 Fed. Appx. 691, 692 n.1 (11th Cir. 2013), cert. denied sub nom. *Dunlop* v.

---

[6] Contrary to the plaintiffs' assertion, this language does not require the court, before concluding that a *Lowe* defect exists, to conduct an individualized evaluation of whether a nonattorney, self-represented parent acting in a representative capacity on behalf of his child would create "unusual burdens" for his adversaries and the court. Rather, the court in *Lowe* discussed the burdens imposed by self-represented parties' litigation simply as one rationale for its ultimate holding. See *Lowe* v. *Shelton*, 83 Conn. App. 758–59.

*Colvin*, 572 U.S. 1005, 134 S. Ct. 1521, 188 L. Ed. 2d 455 (2014); *Adams ex rel. D.J.W.* v. *Astrue*, 659 F.3d 1297, 1299 (10th Cir. 2011); *Myers* v. *Loudoun County Public Schools*, 418 F.3d 395, 399 (4th Cir. 2005); *McPherson* v. *School District No. 186*, 32 Fed. Appx. 769, 770 (7th Cir. 2002); *Wenger* v. *Canastota Central School District*, 146 F.3d 123, 125 (2d Cir. 1998), cert. denied, 526 U.S. 1025, 119 S. Ct. 1267, 143 L. Ed. 2d 363 (1999); *Osei-Afriyie* v. *Medical College of Pennsylvania*, 937 F.2d 876, 883 (3d Cir. 1991); see also *Harris* v. *Apfel*, 209 F.3d 413, 414 (5th Cir. 2000) (addressing nonattorney, self-represented parent's authority to represent child in Social Security appeal when issue was raised for first time by appellee on appeal).[7]

---

[7] We are aware of one circuit that has taken a different approach. In *W. J.* v. *Secretary of Health & Human Services*, 93 F.4th 1228, 1235–37 (Fed. Cir.), cert. denied sub nom. *W. J.* v. *Becerra*,     U.S.    ,     S. Ct.    ,     L. Ed. 2d     (2024), the United States Court of Appeals for the Federal Circuit sua sponte ordered supplemental briefing on the question of whether a minor's self-represented parents were authorized to act in a representative capacity on behalf of their child in prosecuting, and appealing the denial of, a claim for compensation under the National Childhood Vaccine Injury Act of 1986, 42 U.S.C. § 300a-1 et seq. (Vaccine Act). After reviewing the parties' supplemental briefing, the court concluded that "this case does not require us to answer our own question." Id., 1236. The court explained that dismissal of the case would be inefficient and unfair in light of the fact that the government, even after the order for supplemental briefing, had not asked that the appeal be dismissed; that the Rules of the Court of Federal Claims, where the claim had been filed, and procedural rules for Vaccine Act cases expressly permitted such representation; that the Federal Circuit had adjudicated the merits of claims brought by self-represented parents on behalf of their children in several prior nonprecedential decisions; and that the case, which had been fully briefed and argued, had been working its way through the courts for three years and was predicated on alleged injuries that were more than seventeen years old. Id.

*W. J.*, like all the federal cases we cite herein, is not binding on this court and constitutes, at most, persuasive authority only. In any event, the circumstances that motivated the Federal Circuit to refuse to decide the representation question in *W. J.* are either absent from or carry significantly less force in this case. Here, the defendants, following our order for supplemental memoranda, have requested that we conclude that Marciniszyn lacks authority to proceed on behalf of D. Moreover, this court's holding in *Lowe*, which predates the inception of this case by almost two decades and with

We find the reasoning of the United States Court of Appeals for the Second Circuit in *Wenger* to be persuasive. In that case, the court stated that, because "[t]he infant is always the ward of every court wherein his rights or property are brought into jeopardy, and is entitled to the most jealous care that no injustice be done to him," courts have a duty, sua sponte, to inquire as to the propriety of—and to restrain—self-represented nonattorney parents' representation of their children. (Internal quotation marks omitted.) *Wenger* v. *Canastota Central School District*, supra, 146 F.3d 125. This court's holding in *Lowe* was informed by, and expressed, that same solicitude for minors' entitlement to trained legal representation so that they may effectively litigate their claims. See *Lowe* v. *Shelton*, supra, 83 Conn. App. 757 ("[t]he purpose for requiring an attorney is to ensure that children rightfully entitled to legal relief are not deprived of their day in court by unskilled, if caring, parents" (internal quotation marks omitted)). This concern likewise informs our conclusion that it is appropriate for this court to raise and decide the question of Marciniszyn's authority, as a self-represented

which the plaintiffs are well acquainted; see footnote 8 of this opinion; expressly forbids self-represented nonattorney parents without a personal interest at stake from proceeding on their child's behalf, and the plaintiffs have cited no statute or rule of practice to the contrary. In the one case of which we are aware in which this court decided the merits of an appeal that suffered from a *Lowe* defect, it did so without any discussion of or attempt to distinguish the decision in *Lowe*. See *Shockley* v. *Okeke*, 92 Conn. App. 76, 882 A.2d 1244 (2005), appeal dismissed, 280 Conn. 777, 912 A.2d 991 (2007) (certification improvidently granted). Moreover, in a dissenting opinion in *Shockley*, Judge Schaller—the author of *Lowe*—considered the defect a threshold issue that implicated this court's authority to decide the appeal and would have given the parties an opportunity to brief the issue and cure the defect. See id., 86–92 (*Schaller, J.*, dissenting). Finally, notwithstanding the plaintiffs' assertion that "a substantial period has [e]lapsed" since D's alleged injury—his placement on a waiting list—this event occurred, by the plaintiffs' own representations, in February, 2023; the case was filed in March, 2023; and oral argument before this court occurred in September, 2024. This is a far cry from the more than *seventeen years* between injury and adjudication that the court confronted in *W. J.*

nonattorney, to proceed in a representative capacity on behalf of D, even though the parties did not raise the issue in their principal briefs.

Sua sponte consideration of this issue is also warranted in light of Connecticut's prohibition against the unauthorized practice of law. It is well established that "[a self-represented] party may not appear on behalf of another [self-represented] party . . . [and] [t]o do so would be to engage in the unauthorized practice of law." (Citation omitted.) *Collard & Roe, P.C.* v. *Klein*, 87 Conn. App. 337, 343–44 n.3, 865 A.2d 500, cert. denied, 274 Conn. 904, 876 A.2d 13 (2005); see also General Statutes § 51-88. As our Supreme Court has explained, the various functions inherent in the practice of law "require in many aspects a high degree of legal skill and great capacity for adaptation to difficult and complex situations . . . [and] [i]t is of importance to the welfare of the public that these manifold customary functions [of practicing law] be performed by persons possessed of adequate learning and skill and of sound moral character, acting at all times under the heavy trust obligation to clients which rests upon all attorneys." (Citations omitted; internal quotation marks omitted.) *Statewide Grievance Committee* v. *Patton*, 239 Conn. 251, 255, 683 A.2d 1359 (1996); accord *Collinsgru* v. *Palmyra Board of Education*, 161 F.3d 225, 231 (3d Cir. 1998) ("Requiring a minimum level of competence protects not only the party that is being represented but also his or her adversaries and the court from poorly drafted, inarticulate, or vexatious claims. . . . Not only is a licensed attorney likely to be more skilled in the practice of law, but he or she is also subject to ethical responsibilities and obligations that a lay person is not. In addition, attorneys may be sued for malpractice." (Citation omitted.)). In keeping with these strong public policy considerations, this court has not hesitated in

other contexts to consider, sua sponte, whether a self-represented party attempting to proceed before this court in a representative capacity was engaged in the unauthorized practice of law. See, e.g., *Cazenovia Creek Funding I, LLC* v. *Roman*, 223 Conn. App. 739, 743, 309 A.3d 419 (2024); *Ellis* v. *Cohen*, 118 Conn. App. 211, 214 n.8, 982 A.2d 1130 (2009). The plaintiffs have set forth no compelling justification for why we should take a different course here. We therefore conclude that the interests of justice, fairness, integrity of the courts and consistency of the law militate in favor of our considering, sua sponte, Marciniszyn's authority as a self-represented nonattorney to proceed before this court in a representative capacity on behalf of D, and significantly outweigh the interest in enforcing procedural rules governing the preservation of claims.

The plaintiffs do not argue that we have deprived them of a meaningful opportunity to be heard on this issue and, indeed, our September 30, 2024 order for supplemental memoranda has afforded them such an opportunity. See, e.g., *CCT Communications, Inc.* v. *Zone Telecom, Inc.*, 327 Conn. 114, 126 n.9, 172 A.3d 1228 (2017) (explaining that *Blumberg* "calls for supplemental briefing when a reviewing court raises an unpreserved issue sua sponte" (emphasis omitted)); *Shockley* v. *Okeke*, 92 Conn. App. 76, 91–92, 882 A.2d 1244 (2005) (*Schaller, J.*, dissenting) ("[b]ecause the lack of authority to proceed without counsel . . . implicates our authority to decide the appeal, I would give the parties an opportunity to address the *Lowe* problem by ordering supplemental briefs" (citation omitted)), appeal dismissed, 280 Conn. 777, 912 A.2d 991 (2007) (certification improvidently granted).

With respect to prejudice, the plaintiffs assert that our consideration of this issue will cause them "extreme prejudice" because a substantial amount of time has already elapsed since D was notified that he had been

placed on a waiting list for the AG program. The plaintiffs do not, however, attempt to explain how, had the issue of Marciniszyn's authority as a self-represented nonattorney to proceed on D's behalf arisen in the trial court, they would have presented any additional evidence or otherwise proceeded differently—which is the relevant inquiry when determining whether review of an unpreserved issue would prejudice a party. See, e.g., *Kinity* v. *US Bancorp*, 212 Conn. App. 791, 813–14, 277 A.3d 200 (2022).[8] The plaintiffs have thus failed to raise a colorable claim of prejudice.

Finally, the record is adequate for review of this issue. As we discuss in greater detail in parts II and III of this opinion, the question requires no fact-finding on our part—it is undisputed that Marciniszyn is a self-represented nonattorney who is attempting to act as D's next friend—and instead requires us simply to assess the propriety of this representative relationship on the basis of the plaintiffs' pleading and established legal principles. See, e.g., *Matos* v. *Ortiz*, supra, 166 Conn. App. 794 (record is adequate for review of unpreserved issue when issue presents "a pure question of law and the relevant facts are undisputed"). Therefore, we conclude that sua sponte consideration of Marciniszyn's standing in his individual capacity, and of his authority as a self-represented nonattorney to proceed in a representative capacity on behalf of D, is proper.

## II

We next consider the question of Marciniszyn's standing, in his individual capacity. In their supplemental

---

[8] We note that, before they commenced the present action, the plaintiffs previously confronted motions to dismiss and for default, predicated on *Lowe*, in a separate action in which Marciniszyn sought to proceed on D's behalf without the assistance of an attorney. See *Marciniszyn* v. *Taylor*, Superior Court, judicial district of Waterbury, Docket No. CV-20-5026268-S; see also, e.g., *Jackson* v. *Drury*, 191 Conn. App. 587, 590 n.4, 216 A.3d 768 ("[a]n appellate court may take judicial notice of files in the same or other cases"), cert. denied, 333 Conn. 938, 218 A.3d 1050 (2019).

memorandum, the plaintiffs argue that Marciniszyn has standing to bring this appeal because he was a named party in the proceedings before the trial court and "has legally cognizable economic, social, and emotional intertwined interests" in D's admission to the AG program, in connection with D's future college admissions prospects, financial aid and scholarship opportunities, and employment and earning potential. We agree that Marciniszyn is aggrieved by the trial court's decision denying the petition and, thus, has standing, in his individual capacity, to bring this appeal. We further conclude, however, that Marciniszyn lacked standing in his individual capacity to bring this action in the first instance because he has not established that he has suffered a direct injury, traceable to the defendants' conduct, to a legally protected interest belonging to him. As such, the trial court should have dismissed, rather than denied, the petition as to Marciniszyn in his individual capacity.

We begin with a brief discussion of the difference between appellate standing and a party's standing to bring an action in the first instance. In order to establish standing in, and thereby invoke the jurisdiction of, either this court or the trial court, a plaintiff bears the burden of establishing that he or she is aggrieved. Cf. *Perry* v. *Perry*, 312 Conn. 600, 620, 95 A.3d 500 (2014); *Martinelli* v. *Martinelli*, 226 Conn. App. 563, 572–73, 319 A.3d 198 (2024); see also *Lewin* v. *United States Surgical Corp.*, 21 Conn. App. 629, 631, 575 A.2d 262 ("[t]he burden of proving aggrievement rests with the plaintiffs who have claimed it"), cert. denied, 216 Conn. 801, 577 A.2d 716 (1990). "There are two general types of aggrievement, namely, classical and statutory; either type will establish standing, and each has its own unique features." (Internal quotation marks omitted.) *In re Ava W.*, 336 Conn. 545, 554, 248 A.3d 675 (2020). "The fundamental test for determining [classical] aggrievement

encompasses a well-settled twofold determination: first, the party claiming aggrievement must successfully demonstrate a specific, personal and legal interest in [the subject matter of the challenged action], as distinguished from a general interest, such as is the concern of all members of the community as a whole. Second, the party claiming aggrievement must successfully establish that this specific personal and legal interest has been specially and injuriously affected by the [challenged action]." (Internal quotation marks omitted.) *Browning* v. *Van Brunt, DuBiago & Co., LLC*, 330 Conn. 447, 455, 195 A.3d 1123 (2018). Statutory aggrievement, meanwhile, "exists by legislative fiat, not by judicial analysis of the particular facts of the case. In other words, in cases of statutory aggrievement, particular legislation grants standing to those who claim injury to an interest protected by that legislation." (Internal quotation marks omitted.) *In re Criminal Complaint*, 350 Conn. 633, 639, 325 A.3d 921 (2024).

As our Supreme Court has emphasized, however, "[s]tanding for purposes of bringing an action differs from the aggrievement requirement for appellate review under [General Statutes] § 52-263." *In re Ava W.*, supra, 336 Conn. 555. When analyzing whether a plaintiff is classically aggrieved for purposes of bringing an action, the court must assess whether the plaintiff has made a colorable allegation of direct injury, in an individual or representative capacity, to a protected interest, that is traceable to the conduct of the defendant. See, e.g., *Frillici* v. *Westport*, 264 Conn. 266, 280–81, 823 A.2d 1172 (2003). A party can be classically "aggrieved" for purposes of appellate standing, by contrast, when he affirmatively requests that a court act, and his request is denied—even if he lacked standing to bring the action in the trial court. See, e.g., *In re Ava W.*, supra, 555–57. In the context of the appellate standing inquiry, it is the request for judicial relief itself—and not the underlying

factual allegations marshaled in support of that request—that establishes the requisite "specific personal and legal interest," and it is the court's denial of that request that constitutes the requisite injury. Id., 555. The reviewing court retains, however, the obligation to consider—even sua sponte—whether a plaintiff in a case over which it has appellate jurisdiction had standing to bring the action in the first place. See, e.g., *Smith* v. *Snyder*, 267 Conn. 456, 460 n.5, 839 A.2d 589 (2004); see also *State* v. *Bryan*, 229 Conn. App. 364, 366 n.3, 327 A.3d 467 (2024) ("[i]t is well established . . . that [t]he trial court's lack of subject matter jurisdiction does not . . . deprive this court of appellate jurisdiction to determine whether the trial court had jurisdiction" (internal quotation marks omitted)).

Although our order for supplemental memoranda asked the parties to address Marciniszyn's standing, in his individual capacity, to bring this appeal, the parties' submissions largely focus on whether the underlying claims asserted in the action were personal to Marciniszyn or instead were predicated solely on injuries to D. Properly understood, this analysis addresses, not Marciniszyn's *appellate* standing but, rather, his standing to bring this action in his individual capacity in the first instance. We therefore address Marciniszyn's standing, in his individual capacity, both to appeal and to bring this action. We afford these issues plenary review. See, e.g., *C. M.* v. *R. M.*, 219 Conn. App. 57, 65, 293 A.3d 968 (2023); *Johnson* v. *Rell*, 119 Conn. App. 730, 736, 990 A.2d 354 (2010).

A

We begin with Marciniszyn's standing to appeal. Because Marciniszyn does not allege that he is statutorily aggrieved, he must establish that he has been classically aggrieved by the trial court's decision. See, e.g., *In re Probate Appeal of Kusmit*, 188 Conn. App. 196,

201, 204 A.3d 776 (2019). Upon our review of the record and the parties' supplemental memoranda, we conclude that he has done so. As one of two plaintiffs in the proceedings before the trial court, Marciniszyn affirmatively requested that the court act, pursuant to its common-law authority, to issue a bill of discovery. The trial court then denied this request, thereby causing Marciniszyn to suffer an injury. He is therefore classically aggrieved by the trial court's decision. See, e.g., *In re Ava W.*, supra, 336 Conn. 555–57 (mother was classically aggrieved by trial court's denial of motion for posttermination visitation "because she was a party to the underlying litigation who requested that the trial court act pursuant to its common-law authority" and trial court denied her request). He thus has standing to maintain this appeal in his individual capacity.

B

We next consider whether Marciniszyn, notwithstanding his aggrievement by the trial court's decision, had standing to bring the action in his individual capacity in the first instance. The legal principles underlying our inquiry are well established. "The requirement that a party have standing is fundamental. [A] party must have standing to assert a claim in order for the court to have subject matter jurisdiction over the claim. . . . Standing is the legal right to set judicial machinery in motion. One cannot rightfully invoke the jurisdiction of the court unless he [or she] has, in an individual or representative capacity, some real interest in the cause of action, or a legal or equitable right, title or interest in the subject matter of the controversy. . . . Where a party is found to lack standing, the court is consequently without subject matter jurisdiction to determine the cause." (Citations omitted; internal quotation marks omitted.) *Burton* v. *Freedom of Information Commission,* 161 Conn. App. 654, 658–59, 129 A.3d 721 (2015), cert. denied, 321 Conn. 901, 136 A.3d 642 (2016).

"Standing is not a technical rule intended to keep aggrieved parties out of court; nor is it a test of substantive rights. Rather, it is a practical concept designed to ensure that courts and parties are not vexed by suits brought to vindicate nonjusticiable interests and that judicial decisions which may affect the rights of others are forged in hot controversy, with each view fairly and vigorously represented. . . . These two objectives are ordinarily held to have been met when a complainant makes a colorable claim of direct injury he has suffered or is likely to suffer, in an individual or representative capacity. Such a personal stake in the outcome of the controversy . . . provides the requisite assurance of concrete adverseness and diligent advocacy. . . . The requirement of directness between the injuries claimed by the plaintiff and the conduct of the defendant also is expressed, in our standing jurisprudence, by the focus on whether the plaintiff is the proper party to assert the claim at issue." (Citation omitted; internal quotation marks omitted.) *Fort Trumbull Conservancy, LLC* v. *Alves*, 262 Conn. 480, 486, 815 A.2d 1188 (2003).

As we have discussed, "[s]tanding is established by showing that the party claiming it is authorized by statute to bring suit or is classically aggrieved. . . . Aggrievement is established if there is a possibility, as distinguished from a certainty, that some legally protected interest . . . has been adversely affected. . . . [O]nly those individuals who have suffered a direct injury would have standing." (Citation omitted; internal quotation marks omitted.) *Martinelli* v. *Martinelli*, supra, 226 Conn. App. 572–73. Conclusory statements devoid of adequate supporting factual allegations, however, do not establish the requisite protected interest. See, e.g., *State Marshal Assn. of Connecticut, Inc.* v. *Johnson*, 198 Conn. App. 392, 405, 234 A.3d 111 (2020).

The plaintiffs do not claim that Marciniszyn is authorized by statute to bring this action. Thus, in order for

Marciniszyn to have standing to bring this action in his individual capacity, the plaintiffs must establish that he is classically aggrieved, i.e., that he has set forth a colorable claim of direct injury, traceable to the defendants' conduct, to a personal, legally protected interest. See, e.g., *Andross* v. *West Hartford*, 285 Conn. 309, 323, 939 A.2d 1146 (2008). A review of the petition,[9] however—reading its allegations in the light most favorable to the plaintiffs—reveals that the injuries alleged therein are exclusively injuries to D, not to Marciniszyn. It is D's right to be free from discrimination, D's college and career prospects, and D's future earning potential that the plaintiffs allege have been harmed by the defendants' decision to place D on a waiting list. As such, the plaintiffs' allegations do not demonstrate that Marciniszyn—as opposed to D—was classically aggrieved in his individual capacity. See, e.g., *Shockley* v. *Okeke*, supra, 92 Conn. App. 84–85 (Superior Court properly dismissed mother's probate appeal from denial of minor child's name change application for lack of subject matter jurisdiction where "the only matter properly before either the Probate Court or the Superior Court was the child's right to a change of name" and, "[a]s the plaintiff had no legal interest at issue, she was not aggrieved by the decision of the Probate Court denying the application for a change of name").

The fact that the plaintiffs now claim, in their supplemental memorandum, that Marciniszyn has "legally cognizable economic, social, and emotional intertwined interests" of his own in D's ability to attend the AG program—interests that the plaintiffs value at "hundreds of thousands . . . if not millions" of dollars—does not change our conclusion. This is so for two

---

[9] The plaintiffs' reply to the defendants' objection to the petition largely mirrored the allegations in the petition and did not set forth any additional claims of direct harm to Marciniszyn.

reasons. First, the plaintiffs never made any such asser-
tion in their petition, and "a memorandum of law is not
a proper vehicle for supplementing the factual allega-
tions in a complaint . . . ." (Internal quotation marks
omitted.) *Ross* v. *Commissioner of Correction*, 217
Conn. App. 286, 324, 288 A.3d 1055, cert. denied, 346
Conn. 915, 290 A.3d 374 (2023). Second, even if it were
proper for us to consider the plaintiffs' new allegations
as part of our standing analysis, these allegations are
wholly conclusory. The plaintiffs do not state with any
specificity what Marciniszyn's "economic, social, and
emotional intertwined interests" actually are, describe
how those interests have been injured by D's placement
on a waiting list, or explain how they calculated the
monetary value of those interests. In the absence of
adequate supporting factual allegations, these thread-
bare claims do not sufficiently allege classical
aggrievement. See, e.g., *Hendel's Investors Co.* v. *Zon-
ing Board of Appeals*, 62 Conn. App. 263, 274, 771 A.2d
182 (2001) (conclusory statements that " '[p]laintiff is
aggrieved by the decision of the [d]efendant' " and
" '[t]he [p]laintiff has a specific personal and legal prop-
erty interest which was specifically and injuriously
affected by the action of the [d]efendant' " are insuffi-
cient to establish aggrievement). We therefore reverse
in part the trial court's denial of the petition on the
merits and remand with instructions to dismiss the peti-
tion with respect to Marciniszyn in his individual capac-
ity.[10]

---

[10] We emphasize that Marciniszyn—independent of the question of his
authority to represent D's interests as a self-represented nonattorney, which
we discuss in part III of this opinion—had standing in a *representative*
capacity to assert claims on D's behalf in the trial court. See *Lowe* v. *Shelton*,
supra, 83 Conn. App. 755; accord *In re Tayquon H.*, 76 Conn. App. 693,
698–99, 821 A.2d 796 (2003) ("[a]lthough, generally speaking, a person has
no standing to assert the rights of another, when the parties include a
guardian and a minor ward . . . the guardian is indeed entitled to assert
the legal rights of her ward" (footnote omitted)). Throughout proceedings
in the trial court, however, Marciniszyn purported to proceed *both* as D's
next friend *and* in his individual capacity. As he failed to establish any

## III

We now consider whether, in light of this court's decision in *Lowe*, Marciniszyn has the authority as a self-represented nonattorney to proceed in a representative capacity on behalf of D, or whether the appeal as to D should be dismissed. The plaintiffs argue that *Lowe* is distinguishable from the present case. We disagree.

As we have explained, in *Lowe*, this court held that, as a general matter, a nonattorney, self-represented parent lacks the authority to maintain an appeal on behalf of his minor child. See *Lowe* v. *Shelton*, supra, 83 Conn. App. 755–59. The court left open, however, the possibility that a nonattorney, self-represented parent may be authorized to proceed on his minor child's behalf when the parent also has a personal interest at stake in the action. Id., 758–59. In particular, the court in *Lowe* distinguished the matter before it from the scenario that the United States Court of Appeals for the Second Circuit confronted in *Machadio* v. *Apfel*, 276 F.3d 103 (2d Cir. 2002).

In *Machadio*, the court held that a nonattorney, self-represented parent may represent her minor child in an appeal from a denial of supplemental security income (SSI) benefits, when that parent "has a sufficient interest in the case and meets basic standards of competence . . . ." Id., 107. The court in *Machadio* further concluded that the district court had not erred in permitting the self-represented plaintiff parent to proceed on her child's behalf, because—in addition to meeting the basic standard of competency to proceed—she had a personal financial stake in the government's decision as to whether to pay SSI benefits. Id., 106–108. This was so, the court explained, because the plaintiff

---

direct injury to himself, Marciniszyn did not have standing to proceed in his individual capacity; he only had standing to proceed as D's next friend.

parent was responsible for the cost of her child's alleged disability, and, "[i]f [the child] qualifie[d] for disability benefits, then the federal government [would] assume some of the costs associated with [her] condition, freeing the plaintiff's limited resources for other living expenses." Id., 107. In *Lowe*, by contrast, this court determined that the parents seeking to maintain the appeal—who had accused a school official of libeling their son but had raised no claims of their own—had not been directly harmed by the lower court's judgment in the defendants' favor and thus had no interest at stake. *Lowe* v. *Shelton*, supra, 83 Conn. App. 758–59. This court therefore concluded that the parents in *Lowe* could not represent their minor son without an attorney's assistance. Id., 759.

The plaintiffs claim that this case is analogous to *Machadio* because Marciniszyn and D both have interests in the outcome of the matter. For the reasons we set forth in part II of this opinion, however, Marciniszyn has failed to establish that he, as opposed to D, has any direct interest at stake in the trial court's resolution of the matter. Accordingly, as with the parents in *Lowe*, "[t]he [plaintiffs'] reliance on [*Machadio*] . . . is misplaced." Id., 758. We therefore conclude that Marciniszyn, as a self-represented nonattorney, lacks the authority to maintain this appeal on D's behalf.

In *Lowe*, this court held that when a nonattorney, self-represented parent without an interest at stake in the case files an appeal on behalf of his minor child, the appeal suffers from a curable defect. Id., 760. This court in *Lowe* identified two ways in which that defect may be cured: either by having counsel appear on behalf of the minor child; or by the child filing his own self-represented appearance, if he has reached the age of majority during the pendency of the appeal. Id., 761. As we have explained, we provided the plaintiffs with an opportunity to cure the defect by affording Marciniszyn

sixty days in which to retain counsel to appear on D's behalf. See, e.g., *Munoz* v. *Stableford*, Superior Court, judicial district of New Haven, Docket No. CV-13-5034701-S (January 10, 2014) (57 Conn. L. Rptr. 454, 455) (affording parent sixty days to cure *Lowe* defect by retaining counsel). He has not done so. Nor has D reached the age of majority, such that he would be eligible to file a self-represented appearance.[11] Accordingly, we dismiss the appeal as to D.

The appeal is dismissed as to D; the judgment denying the petition as to Marciniszyn in his individual capacity is reversed and the case is remanded with direction to render judgment dismissing the petition as to Marciniszyn for lack of subject matter jurisdiction; the judgment is affirmed in all other respects.

In this opinion the other judges concurred.

---

[11] In their supplemental memorandum, the plaintiffs suggest that this court should allow them to cure the *Lowe* defect by staying adjudication of the appeal until D reaches the age of majority and then permitting D to file a self-represented appearance. The record reflects that D is currently sixteen years old. The age of majority in this state is eighteen years. See General Statutes § 1-1d. The plaintiffs' proposed "cure" would thus delay the resolution of this appeal by more than one year, in contravention of our responsibility to "[process] cases in an orderly and expeditious manner." *Srager* v. *Koenig*, 42 Conn. App. 617, 622, 681 A.2d 323, cert. denied, 239 Conn. 935, 684 A.2d 709 (1996), and cert. denied, 239 Conn. 936, 684 A.2d 709 (1996). The plaintiffs cite no authority or other extenuating circumstances to justify such an extraordinary delay in the proceedings, and we decline to adopt this course of action.